COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PAGOSA OIL AND GAS, L.L.C. AND | § | |
| SOMBERO OIL AND GAS COMPANY, | | No. 08-07-00090-CV |
| L.L.C, | § | |
| | | Appeal from the |
| Appellants, | § | |
| | | 143rd Judicial District Court |
| v. | § | |
| | | of Loving County, Texas |
| | § | |
| MARRS AND SMITH PARTNERSHIP, | | (TC# 06-07-742) |
| AND RICKEY SMITH, | § | |
| | | |
| Appellees. | | |

**O P I N I O N**

Pagosa Oil and Gas and Sombrero Oil and Gas Company appeal a summary judgment in favor of Marrs and Smith Partnership and Rickey Smith. We find that Pagosa Oil and Gas lacks standing to sue and we dismiss its claim for lack of subject-matter jurisdiction. The remaining summary judgment is reversed and the cause remanded.

This case marks the third chapter of litigation involving the mineral development of the Frying Pan Ranch, which lies in parts of Loving, Winkler, and Andrews County, Texas, and Lea County, New Mexico. *See Marrs and Smith P'ship v. D.K. Boyd Oil & Gas Company, Inc.*, 223 S.W.3d 1, 8 (Tex.App.--El Paso 2005, pet. denied); *Marrs and Smith P'ship v. D.K. Boyd Oil and Gas Company, Inc.*, No. 08-00-00386-CV, 2002 WL 1445334 (Tex.App.--El Paso 2002, no pet.)(not designated for publication).

On August 1, 1999, D.K. Boyd Oil and Gas Co. leased mineral rights to property in

Loving County from Marrs and Smith Partnership.[1] The term of the Boyd-Smith lease was one year, but provided Boyd with the option to extend the term for a second and third year, despite a lack of production, by paying additional bonus consideration to the partnership. Boyd tendered its first bonus payment in the amount of $38,144.58 on August 3, 1999.

On March 9, 2000, counsel for the Partnership wrote Boyd a letter indicating that the Partnership intended to rescind the lease. On March 16, 2000, Mr. Smith and the Partnership filed suit against Boyd seeking recision of the lease ("the prior lawsuit"). Boyd counter-claimed for tortious interference with a contract alleging, in part that the Partnership's actions had interfered with the development of other mineral interests on the ranch. Boyd did not assert a counter-claim for breach of the lease.

Despite the ongoing lawsuit, Boyd tendered the second bonus payment for extension of the lease on July 24, 2000. The Partnership returned the check on August 14, 2000, and again indicated its intent to recind the lease. Again on July 21, 2001, Boyd tendered the bonus payment for the final extension period. That check was also returned by the Partnership. Final judgment in the prior lawsuit was issued on September 3, 2004.

In 2002, Pagosa Oil and Gas ("Pagosa") and Sombrero Oil and Gas Company ("Sombrero") agreed to participate in an oil and gas investment project, organized by Boyd,

---

[1] Appellee Rickey Smith, is the general partner of Marrs and Smith Partnership. When it is necessary to refer to Rickey Smith individually in this opinion, we will refer to him as "Mr. Smith." Mr. Smith and the Partnership will be referred to jointly as "Appellees." We will refer to D.K. Boyd Oil and Gas Company and other entities owned or controlled by Mr. D.K. Boyd, collectively as "Boyd." We will refer to the August 1, 1999 mineral lease as the "Boyd-Smith" lease. For a more detailed explanation of the parties and their relationships *see Marrs and Smith P'ship v. D.K. Boyd Oil & Gas Company, Inc.*, 223 S.W.3d 1-12 (Tex.App.--El Paso 2005, pet. denied).

called the "Leiman Prospect." In addition, on July 1, 2006, Boyd and Sombrero signed an agreement whereby Boyd assigned its potential breach of contract cause of action against the Partnership to Sombrero. Pagosa was not a party to the assignment.

Sombrero and Pagosa filed their original breach of contract petition against Mr. Smith and the Partnership for breach of the Boyd-Smith lease on July 26, 2006. The petition alleged that the Partnership's recision constituted breach of the lease. The amended petition also included an allegation that the Leiman Prospect participants were injured by the partnership's actions because the recision caused delays in the drilling of an oil well, and the loss of numerous mineral leases for non-production.

Mr. Smith and the Partnership filed a joint motion for summary judgment on October 5, 2006, asserting traditional and no-evidence grounds. On October 31, 2006, Pagosa and Sombrero filed their summary judgment response and a cross-motion for partial summary judgment as to Mr. Smith and the Partnership's liability for breach of the lease. The Partnership filed a response to the cross-motion and a supplement to its original motion on March 2, 2007. This motion included a "jurisdictional plea" in which the Partnership challenged Pagosa and Sombrero's standing to assert a claim for breach as they were not parties to the Boyd-Smith lease.

Mr. Smith filed an independent response to Sombrero and Pagosa's cross-motion, and a reply to Sombrero and Pagosa's response to the original summary judgment motion on March 14, 2007. Mr. Smith's motion incorporated the Partnership's jurisdiction and standing arguments. The trial court entered an order denying Sombrero and Pagosa's motion for partial summary judgment, and granting summary judgment in favor of Mr. Smith and the Partnership. The order

did not specify the grounds relied upon, and did not address Pagosa or Sombrero's standing. Pagosa and Sombrero appeal.

Appellants raise two issues for our review. In Issue One, they challenge the summary judgment in favor of Mr. Smith and the Partnership. In Issue Two, they contend the trial court erred by denying their motion for partial summary judgment as to breach of contract liability.

As a preliminary matter, we must address Appellees' assertion that Pagosa and Sombrero lack standing to maintain this lawsuit. In Texas, "standing" denotes the presence of a real controversy between the parties, that will actually be determined by the judicial declaration sought. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Standing is a necessary component of subject-matter jurisdiction, without which a court lacks authority to hear a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). Whether a court properly determined it had subject matter jurisdiction over a case is a question of law subject to *de novo* review. *See Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In making a determination regarding a party's standing, we take the pleadings as true and construe them in the pleader's favor, as well as consider evidence relevant to the jurisdictional inquiry. *Id*. at 226-28.

To establish its standing to assert a breach of contract cause of action, a party must prove its privity to the agreement, or that it is a third-party beneficiary. *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 738 (Tex.App.--Dallas 2007, pet. denied). For standing purposes, privity is established when the plaintiff proves the defendant was a party to an enforceable contract with either the plaintiff, or a third party who assigned its cause of action to the plaintiff. *Stonegate Village, L.P.*, 234 S.W.3d at 738.

The Partnership argues that because Pagosa and Sombrero were not parties to the Smith-Boyd lease, the entities do not have standing to assert the breach of contract cause of action. There is no dispute that Appellants were not parties to the original lease agreement. However, both argue that they have standing to assert the cause of action because they were participants, through Boyd, in an oil and gas exploration project called the "Leiman Prospect." According to Appellants' First Amended Original Petition and their response to the Partnership's motion for summary judgment, the original dispute between Boyd and the Partnership caused a delay in drilling the Leiman Prospect's first well. Because of the delay, the prospect lost numerous leases, which lead to monetary damages to all the participants.

Neither appellant argues that a contract existed between Leiman participants and the Partnership or Mr. Smith.[2] There are no allegations that Pagosa and Sombrero were intended to be third-party beneficiaries of the Boyd-Smith lease. Even if we assume that Appellants were harmed by the Partnership and Smith's actions surrounding the Boyd-Smith lease, as is stated in Appellants' pleadings, a judicial determination that the Boyd-Smith lease was breached would have no remedial effect on that harm. Therefore, to the extent Pagosa and Sombrero depend on their status as Leiman participants for standing to sue for breach of contract they fail. Because its participation in the Leiman Prospect was Pagosa's sole basis for standing, the trial court was without jurisdiction and Pagosa's claim must be dismissed.

Sombrero also asserts a second alternative basis for its standing. In the summer of 2006,

---

[2] According to Appellants' summary judgment response, the property covered by the Boyd-Smith lease was not originally part of the prospect. The property only became available for drilling when the mineral rights came into the Leiman Prospect after it was re-leased to another company.

Sombrero and Boyd signed the following "Assignment and Transfer of Causes of Action."

> D.K. Boyd Oil and Gas Co., Inc. ("Boyd" or "Assignor") for the consideration set forth below does hereby ASSIGN, GRANT, SELL and CONVEY unto SOMBRERO OIL & GAS COMPANY, L.L.C. ("Assignee") the following:
>
>> All right title and interest in and to all causes of action that the Assignor has in any way related to the August 1, 1999 lease of minerals from Smith and Marrs Partnership to D.K. Boyd Oil and Gas Co., Inc. . . . (the "Lease") including, but not limited to, all causes of action for the breach of the Lease by Marrs and Smith Partnership and Rickey Smith.
>
> TO HAVE AND TO HOLD the above described rights and causes of action, together with, all and singular, the rights and privileges thereto in any [way] belonging, unto the said Assignee, its successors and assigns forever.
>
> As consideration for this assignment, Assignee shall remit to Assignor, within 30 days of recovery, 1/3 of the Assignor's pro rata interest in any actual damage award, based on the Assignee's pro rata interest in the Lease, minus actual out of pocket expenses incurred prosecuting the assigned causes of action.
>
> Assignor agrees to cooperate and assist as necessary in prosecuting the assigned causes of action, including providing requested documentation and to execute such further documents as necessary to complete the assignment set forth above.
>
> Assignor covenants that the rights, title and interest assigned herein have not been previously assigned or encumbered.
>
> AGREED to be effective the 1st day of July, 2006.

Generally, this assignment would provide Sombrero with a basis for standing in the breach of contract suit. *See Stonegate Village, L.P.*, 234 S.W.3d at 738. However, the Partnership and Smith seek to avoid this assignment on two grounds. First, they argue that the Boyd-Smith lease prohibited assignments by its terms. Second, they argue that even if this assignment was not prohibited by the lease terms, it must be declared void as a matter of public policy because Sombrero, the assignee, is controlled by attorneys. We will address each

argument in turn.

An "assignment" is simply a transfer of some right or interest. *See University of Texas Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 452 (Tex.App.--Houston [14th Dist.] 1989, no writ). As such, an assignment is a contract between the assignor of a right and an assignee, who receives the authority to assert that right. *See id*. at 453. As with any other contract term, parties to a contract can agree their rights in a particular agreement are not assignable. These "anti-assignment" clauses are enforceable in Texas unless rendered ineffective by a statute. *Johnson v. Structured Asset Services, L.L.C.*, 148 S.W.3d 711, 721 (Tex.App.--Dallas 2004, no pet.), *citing Reef v. Mills Novelty Co.*, 126 Tex. 380, 89 S.W.2d 210, 211 (Tex. 1936).

The "anti-assignment" clause in the Boyd-Smith lease provided:

> Lessor expressly reserves the right of approval of any and all assigning in whole or in part, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, and it is hereby agreed that in the event that this Lease shall be assigned as to a part or as to parts of the above described lands that Lessor shall receive a copy of such assignment, farmout, etc. within thirty (30) days of the effective date of same.

Appellees argue that this provision rendered any attempt by Boyd to assign any rights arising from the contract unenforceable without the Partnership's consent. Therefore, Appellees conclude, Sombrero acquired no actionable interest from Boyd and has no standing to sue. As Sombrero points out however, Texas law recognizes a distinction between a contracting party's ability to assign rights under a contract containing an anti-assignment provision, and that same party's ability to assign a cause of action arising from breach of that contract. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 705-07 (Tex. 1996)(absent specific circumstances, causes of action in Texas are freely assignable); *Dearborn Stove Co. v. Caples*, 236 S.W.2d 486,

490 (Tex. 1951)("That the lease itself was not validly assigned or assignable does not prevent a valid assignment of the overcharge claim."); *Lindsay ex rel. Lindsay v. S. San Antonio Indep. Sch. Dist.*, 983 S.W.2d 778, 779-80 (Tex.App.--San Antonio 1998, no pet.)(recognizing assignability of decedent's cause of action for alleged breach of employment contract despite estate's inability to assign contract itself); *see also* TEX.BUS.&COM.CODE ANN. § 2.210(b) (Vernon 2009)(right to damages for breach of contract can be assigned despite agreement otherwise); TEX.PROP.CODE ANN. § 12.014(a)(Vernon Supp. 2009)(interest in cause of action is assignable, regardless of assignability of cause of action in law or equity, if the transfer is in writing).

Appellees' argument on this point is limited to the enforce ability and terms of the anti-assignment clause. They conclude that because an anti-assignment clause is generally enforceable, Boyd's attempt to assign its cause of action was ineffective. This argument assumes that the clause is evidence of the parties' intent to prevent both a contractual assignment, as well as a cause of action assignment. We do not agree it evidences such an intent.

When a written instrument is worded so that it can be given a definite meaning or interpretation, it will be interpreted as a matter of law. *SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). This anti-assignment clause states that the lessor, the Partnership, would have the right to notice and pre-approval of any assignments of the lease. The clause does not indicate an intent to limit the parties' rights to assign a cause of action arising from an alleged breach of the lease. Therefore, Boyd maintained its common law right to assign its cause of action for breach, and Sombrero has stepped into Boyd's position via the assignment.

However, Appellees argue this particular assignment should still be declared void

-8-

because Sombrero, the assignee, is "an attorney-controlled entity." In essence, Appellees argues that because one or more of Boyd's former attorneys own interests in Sombrero, the assignment constitutes an unconscionable fee agreement and cannot be enforced. An "unconscionable" contract is an unenforceable contract. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). As we have discussed above, only parties in privity to the contract or third party beneficiaries are entitled to enforce a contract. *See Stonegate Village, L.P.*, 234 S.W.3d at 738. For the same reasons, we have concluded Pagosa has no standing to sue for breach of the Boyd-Smith lease, Appellees have no basis to argue the assignment agreement between Boyd and Sombrero is unenforceable. Appellees are therefore left to argue that this assignment is void because it falls into one of the categories that the Texas Supreme Court has declared void on public policy grounds.

As discussed above, generally causes of action in Texas are freely assignable. *See Gandy*, 925 S.W.2d at 705-707. However, the Texas Supreme Court has recognized several situations where policy concerns outweigh a party's general right to assign a cause of action because the effect of the assignment is to distort the parties' positions so that they have incentives not generally associated with their positions in the underlying dispute. *See Coronado Paint Co., Inc. v. Global Drywall Sys., Inc.*, 47 S.W.3d 28, 31 (Tex.App.--Corpus Christi 2001, pet. denied); *see also Gandy*, 925 S.W.2d at 714 (an assignment of a cause of action that works to collude against an insurance carrier); *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex.App.--San Antonio 1994, writ ref'd)(an assignment of a legal malpractice claim); *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992)(an assignment that creates a Mary Carter agreement); *International Proteins Corp. v. Ralston-Purina Co.*, 744 S.W.2d 932, 934 (Tex. 1988)(an assignment of the

plaintiff's cause of action to a joint tortfeasor of the defendant); *Trevino v. Turcotte*, 564 S.W.2d 682 (Tex. 1978)(an assignment of interests in an estate that distorts the true positions of the beneficiaries).

Appellees fail to explain how this situation falls within one of these categories. They also fail to explain how the assignment between Boyd and Sombrero has so distorted the parties' positions in the litigation that the circumstances warrant the creation of a new category of void assignments. Accordingly, the assignment is not void as a matter of law, and Sombrero has standing to assert Boyd's breach of contract cause of action.

We now turn to the merits of the parties' summary judgment motions. When both sides move for summary judgment, and the trial court grants one motion and denies the other, the reviewing court considers both sides' summary judgment evidence and determines all issues presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The reviewing court must consider all the grounds presented in both motions, and render the judgment the trial court should have rendered. *Id*.

The cross-motions in this case presented both traditional and no-evidence grounds for summary judgment. *See* TEX.R.CIV.P. 166a(c) and 166a(i). An appellate court reviews summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a no-evidence motion for summary judgment, we must disregard all contrary evidence and inferences, and review the evidence in the light most favorable to the non-movant. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Once the moving party specifically states the elements to which there is no evidence, the burden shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact

regarding each element challenged. *Gray v. Woodville Health Care Ctr.*, 225 S.W.3d 613, 616 (Tex.App.--El Paso 2006, pet. denied). If the non-movant produces more than a scintilla of evidence regarding the challenged elements, a genuine issue of material fact is raised. *Id*. Less than a scintilla of evidence exists if the evidence is so weak as to create no more than a mere surmise or suspicion. *Chapman*, 118 S.W.3d at 751. When the evidence rises to the level that enables reasonable minds to differ in their conclusions, then more than a scintilla exists. *Id*. If the non-movant does not produce more than a scintilla of evidence, the court "must" grant the motion. *See* TEX.R.CIV.P. 166a(i); *Larned v. Gateway East, Inc.*, 186 S.W.3d 597, 601 (Tex.App.--El Paso 2006, no pet.).

Sombrero sued Appellees for breach of contract based on its position as assignee of Boyd's cause of action for breach of the lease. The elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the claimant; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex.App.--El Paso 2000, no pet.). Appellees moved for no-evidence summary judgment on the grounds that there was no evidence of a contract between Sombrero and Appellees, that there was no evidence that Sombrero performed, or tendered performance, and that there was no evidence of damages suffered by Sombrero as a result of Appellees alleged breach of the lease.

In the first half of Issue One, Sombrero challenges Appellees' no-evidence grounds regarding its breach of contract cause of action. All of Appellees' no-evidence arguments are based on Appellees' assertion that Sombrero was not a party to the original lease, and did not acquire anything by the assignment from Boyd. Appellees focus their no-evidence arguments on

-11-

the premise that Sombrero was a stranger to the lease agreement, and therefore cannot provide evidentiary support for its claim. As we discussed in our analysis of Sombrero's standing, Sombrero stepped into Boyd's position regarding the claim for breach. *See Allan*, 777 S.W.2d at 453. The proper summary judgment inquiry revolves around Boyd's relationship to the lease, and Boyd's performance and damages. Sombrero's summary judgment response included evidence focused precisely on those issues. Specifically, Sombrero produced evidence of the original Boyd-Smith lease, evidence of Boyd's tender of bonus payments to Appellees in 1999, 2000, and 2001, and evidence of Appellees' attempted repudiation and recision.[3] We conclude, having reviewed the evidence in a light most favorable to the non-movant, the proffered evidence satisfied Sombrero's burden in response to the no-evidence motion. Therefore, summary judgment was not properly granted on Appellees' no-evidence grounds.

The scope of review for a traditional summary judgment is well established. *See* TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We must determine whether the movant has carried its burden to establish that there is no genuine issue of material fact, so that judgment should be granted as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). Summary judgment is proper if the defendant disproves at lease one element of the plaintiff's cause of action, *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002), or establishes all elements of an affirmative defense. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). Once the movant

---

[3] We decline to address Appellees' argument that Boyd failed to perform because the bonus payments were paid via check rather than "in the coin of the realm." This argument was not presented to the trial court, and has not been preserved for our review. *See* TEX.R.APP.P. 33.1(a).

establishes a right to judgment as a matter of law, the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). As in the case of a no-evidence motion, when reviewing a traditional summary judgment motion, we take as true all competent evidence favorable to the non-movant, indulge every reasonable inference, and resolve any doubts in the non-movant's favor. *See Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Unlike a no-evidence motion, a traditional motion for summary judgment must stand on its own merits, there is no right to a traditional summary judgment by default. *See City of Houston*, 589 S.W.2d at 678.

In Issue Two, Sombrero contends the trial court erred by not granting its partial motion for summary judgment. In its cross-motion, Sombrero argued it was entitled to judgment as a matter of law as to Appellees' liability for breach. To establish liability for breach of contract it was Sombrero's burden to establish as a matter of law: (1) the existence of a valid contract; (2) performance or tendered performance by the claimant; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Hornburg*, 20 S.W.3d at 758. Sombrero's motion for partial summary judgment was limited to the issue of Appellees' liability for breach of contract. In the body of its motion, Sombrero presented arguments for establishing the first three elements of its claim, but failed to address the final element.

The final element in a breach of contract cause of action includes a causation requirement. *See Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 397 (Tex.App.--El Paso 1998, pet. denied). The plaintiff must show that it suffered a monetary injury, as the result of the defendant's breach. *See Haugland*, 973 S.W.3d at 396-97. Accordingly, to be entitled to partial

summary judgment as to Appellees' liability it was Sombrero's burden to establish that Boyd was injured, and that the injury was caused by the breach. Sombrero failed to address this issue in its motion for partial summary judgment, and therefore failed to carry its burden to establish liability. Had summary judgment been granted in this instance, before determining the amount of damages which should be awarded, the fact finder would ultimately be required to determine whether Boyd was injured at all, and whether that injury was the result of Appellees' breach. While these issues may have been proven without difficulty, they are part of the claimant's burden in establishing liability, and so cannot be presumed.[4] Because Sombrero failed to demonstrate its right to judgment as a matter of law regarding Appellees' liability for breach, this was not a proper ground for summary judgment. Issue Two is overruled.

In the second half of Issue One, Sombrero addresses Appellees' affirmative defenses. Appellees jointly moved for summary judgment on the affirmative defenses of *res judicata* and limitations. Smith independently moved for summary judgment on the following additional defenses: release, collateral estoppel, one satisfaction rule, election of remedies, judicial estoppel, impossibility of performance, and failure of consideration.

A defendant is entitled to summary judgment on an affirmative defense when the party conclusively establishes each element of the defense asserted. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). When the material facts are undisputed, the nonmovant may

---

[4] In addition, the Texas Rules of Civil Procedure 166a(a) specifies that partial summary judgments are to be granted in circumstances where a fact issue remains regarding the "amount of damages." When, as in this case, the summary judgment movant has not addressed whether there was damage as the result of a breach, the remaining issue is not limited to the amount of damage, and partial summary judgment would be improper. In this way, the rule distinguishes between whether an individual is damaged, for liability purposes, and the amount of monetary damages which should be awarded.

defeat a motion for summary judgment by establishing that the movant's legal position is unsound. *Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 90 (Tex.App.--Dallas 1996, writ denied).

We will begin with Appellees' joint defenses; *res judicata* and limitations. *Res judicata* is an affirmative defense. TEX.R.CIV.P. 94. The party claiming the defense must prove: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the identify of the parties or those in privy with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *In re K.S.*, 76 S.W.3d 36, 43 (Tex.App.--Amarillo 2002, no pet.). *Res judicata* precludes both re-litigation of claims that have been fully adjudicated, and subsequent litigation of claims which arise out of the subject matter as the prior litigation, and therefore could have been brought in the prior suit. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652-53 (Tex. 1996); *McFarland v. Bridges*, 104 S.W.3d 906, 909 (Tex.App.--El Paso 2003, no pet.).

Sombrero is in privity with Boyd by assignment, and Boyd was party in the prior suit. There is no dispute that a final judgment was rendered in the prior action. Finally, in the face of the Partnership's attempted recision and repudiation, Boyd could have asserted a counter-claim in the prior case for breach of contract. *See Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999)(anticipatory repudiation gives the nonrepudiating party the option of treating the repudiation as a breach, or ignoring the repudiation and awaiting the agreed time for performance).

However, as Sombrero argues, *res judicata* does not bar a former defendant from asserting a claim in a later action that could have been filed as a counter-claim in the first suit,

unless the claim was compulsory in the earlier action.  *See Ingersoll-Rand, Co.*, 997 S.W.2d at 207.  A counter-claim is compulsory only if:  (1) it is within the jurisdiction of the court; (2) the claim is not the subject of another pending action at the time of the filing of the answer; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction.  *Ingersoll-Rand*, 997 S.W.2d at 207.  When *res judicata* is asserted to bar a claim which could have been asserted by a former defendant in a prior suit, the movant's summary judgment burden includes establishing each of these elements.  *See id*. at 207.

Sombrero argues that this breach of contract claim was not a compulsory counter-claim because it was not mature at the time of the prior litigation.  A claim is mature when it has accrued.  *Id.* at 208-10.  In the case of a continuing contract, the limitations period begins to run at the earlier of the following events:  (1) when the obligations are completed; (2) when the contract is terminated according to its terms; or (3) when the contract is anticipatorily repudiated by one party, and the repudiation is adopted by the other party.  *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 382 (Tex.App.--Fort Worth 1994, writ denied).  In other words, when one party attempts to repudiate the contract despite its ongoing obligations, the injured party has the option to treat the contract as still in force and retain its right to sue on the contract; or to treat the breaching party's repudiation as a complete breach and terminate the contract immediately.  *See F.D. Stella Prod. Co. v. Scott*, 875 S.W.2d 462, 464 (Tex.App.--Austin 1994, no writ).

The summary judgment evidence establishes that the Partnership attempted to repudiate

-16-

the lease in early 2000. In response, Boyd chose to continue to honor the lease by tendering its annual bonus payments over the next two years. Boyd retained its right to accept the repudiation and sue on the contract during that period. *See Scott*, 875 S.W.2d at 464. Because Boyd chose to continue to tender its performance during that period, the contract did not terminate until the expiration of the final lease extension period on August 1, 2002. Only then was the breach of contract cause of action mature. The prior lawsuit was filed prior to the breach of contract cause of action becoming mature.[5] Accordingly, the cause of action was not a compulsory counter-claim, and Appellees are not entitled to summary judgment on the basis of *res judicata*. *See Ingersoll-Rand*, 997 S.W.2d at 207.

Appellees' limitations defense fails for similar reasons. To establish a limitations defense, a defendant must conclusively prove: (1) when the cause of action accrued; and (2) negate the discovery rule, if it applies and has been plead. *See KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The limitations period for a breach of contract cause of action is four years. TEX.CIV.PRAC.&REM.CODE ANN. § 16.004 (Vernon 2002).

As we discussed above, this breach of contract cause of action accrued on August 1, 2002. Sombrero filed its original petition in this case on July 26, 2006, within the limitations period. Without addressing Boyd's ability to continue to tender its performance despite the attempted repudiation, Appellees argue that Boyd's breach of contract cause of action accrued no later than August 1, 2000. This date, according to Appellees, was the final deadline for Smith's

---

[5] The Partnership filed the prior lawsuit on February 9, 2000. *See Boyd Oil & Gas Co.*, 223 S.W.3d at 11.

performance as it was the final opportunity for Smith to retract its repudiation prior to the first lease bonus payment. They argue that Boyd did not have the option to continue its own performance until the lease expired on August 1, 2002, because "time is of the essence" in an oil and gas lease. While we agree generally with this statement of law,[6] we are unaware of Texas authority holding that a limitations period is affected by a contract's classification as such. Appellees have failed to cite any authority indicating that Boyd's option to immediately treat the repudiation as a breach, or to wait for the lease's termination, was affected by the fact that time is of the essence in the oil and gas context. Because Appellees failed to establish their right to summary judgment on their limitations defense, the defense was not a proper ground for summary judgment.

Mr. Smith also raised several additional affirmative defenses in his independent summary motion and response. Three of these defenses; release, collateral estoppel, and the one satisfaction rule are all dependant on the success of Appellees' argument that the prior lawsuit necessarily included litigation of all issues surrounding the Partnership's attempted repudiation, including any claims for breach of contract. Given our conclusion in the discussion of Appellees' *res judicata* defense, that the breach of contract cause of action was not precluded by the prior suit, Mr. Smith is not entitled to summary judgment on these additional defenses.

Mr. Smith's motion also included the affirmative defense known as "election of remedies." This defense bars recovery when a party successfully exercises an informed choice between two or more remedies, rights, or states of facts which are so inconsistent as to constitute

---

[6]*See Amber Oil & Gas Co. v. Bratton*, 711 S.W.2d 741, 743 (Tex.App.--Austin 1986, no writ)(recognizing that time is of the essence in an oil and gas lease).

a manifest injustice. *See Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980). Although the Texas Supreme Court continues to recognize the defense, it is not favored, and should not be extended. *See Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex. 1987).

According to Mr. Smith's motion:

> It is undisputed that [Boyd] was successful in the Prior Litigation on the tortious interference claim. [Boyd] had the option, in the Prior Litigation, to sue for various causes of action, including breach of contract. [Boyd] elected to pursue a tortious interference claim rather than a breach of contract claim. Allowing [Sombrero] to bring a breach of contract claim that is inconsistent with the Prior Litigation would be manifestly unjust to [Appellees]. [Appellees] changed their position, by leasing their minerals to a third party after the Lease expired, based on the fact that all causes of action related to the alleged repudiation had been litigated in the Prior Litigation.[7]

To establish a right to this defense, Mr. Smith had to establish, as a matter of law, that Boyd's decision to pursue a tortious interference claim in the prior lawsuit was inconsistent with the breach of contract claim now asserted. *See Bocanegra*, 605 S.W.2d at 851. He has failed to carry his burden in this instance.

It is important to recognize these two types of claims accrue in significantly different contexts. A claim for tortious interference is asserted by a plaintiff whose contractual rights have been interfered with by a stranger to the contract; a third party. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002); *see also Marrs and Smith Partnership*, 223 S.W.3d at 19 (noting that Boyd's tortious interference claim alleged that the Partnership, a third party, interfered with Boyd's contractual relationships with two other entities). A breach of contract

---

[7]The only summary judgment evidence specifically referenced in this passage is a July 2, 2004, mineral lease between the Partnership and a lessee identified as Chalfant Properties, Inc.

cause of action on the other hand, addresses a plaintiff's injury for non-performance by the other party to the agreement. *See Hornburg*, 20 S.W.3d at 758. Mr. Smith has failed to cite Texas precedent, and we are unaware of authority holding that such claims are *per se* inconsistent. Rather, in circumstances such as those presented here, where a non-repudiating party exercises its right to delay the assertion of a breach claim, it is not difficult to foresee that during that delay, events could transpire which could lead to a claim for tortious interference. To preclude a party from recovering for both injuries would constitute an improper extension of the election of remedies doctrine. Accordingly, summary judgment was not properly granted on this ground.

Mr. Smith also asserted the doctrine of judicial estoppel as a bar to Sombrero's claim. Judicial estoppel precludes a party from adopting a position inconsistent with one that was successfully maintained in an earlier proceeding. *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). The elements of judicial estoppel in Texas are: (1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) which was successfully maintained in the prior proceeding; (3) not made in advertently or by mistake, or pursuant to duress; and (4) which was deliberate, clear, and unequivocal. *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 650 n.2 (Tex.App.--El Paso 1997, writ denied).

In support of this defense, Mr. Smith presents a twenty-seven page excerpt from Mr. D.K. Boyd's testimony in the prior lawsuit. In the section provided, Mr. Boyd discusses the terms of the more than 200 leases he obtained in his endeavors to develop the mineral reserves of the Frying Pan Ranch. Mr. Boyd also explains how the Partnership's refusal to consent to an assignment of the lease forced Boyd to re-negotiate an independent farmout agreement, specific to the Boyd-Smith lease, while 233 other leases were subject to a second farmout and an

assignment to a third entity.

Mr. Smith fails to explain how Mr. Boyd's testimony is inconsistent with the position Sombrero now asserts. As the movant on this affirmative defense, it was Mr. Smith's burden to establish his right to the defense as a matter of law. *See Hood*, 924 S.W.2d at 121. Because the motion fails to address how the proffered evidence constitutes a prior inconsistent statement, Mr. Smith has failed to satisfy his burden and summary judgment was not properly granted on the judicial estoppel defense.

In a section of his summary judgment motion and response titled "failure of contract and failure of consideration," Mr. Smith concludes that because the second and third lease bonus payments tendered by Boyd were returned, there was no consideration to support the lease extensions. A failure of consideration occurs when the plaintiff fails to perform a condition precedent to the defendant's duty to perform. *See Nat'l Bank of Commerce v. Williams*, 84 S.W.2d 691, 692 (Tex. 1935). The doctrine assumes the contract is already in existence. Consideration consists of either a benefit to the promisor or a detriment to the promisee. *See Tamez v. Southwestern Motor Transp., Inc.*, 155 S.W.3d 564, 571 (Tex.App.--San Antonio 2004, no pet.).

Mr. Smith admits that Boyd tendered the lease bonus payments. Those tenders constituted a detriment to Boyd, and therefore satisfy the definition of consideration. *See id*. at 571. The Partnership's decision to refuse the payments did not simultaneously create a claim for breach and a defense to that claim by depriving the contract of consideration. The evidence established the presence of consideration to support the second and third extensions. The fact that the Partnership chose not to accept that consideration, does not establish a failure of

consideration defense.

In another section of his summary judgment response titled "impossibility of performance," Mr Smith states:

> [Sombrero] [has] not produced any evidence to show that they were ready willing, and able to drill the Section 27 well in the spring of 2002. Smith has discovered that there were other mineral interests that were not leased as such time and such mineral interest constituted a far greater percentage of the mineral estate than that of [the Partnership].

Mr. Smith has failed to provide, or cite to, any evidence in the summary judgment record which would support his conclusion that Boyd was unable to perform its obligations under the lease. As the movant on this affirmative defense, it was Mr. Smith's burden to establish his right to the defense as a matter of law. *See Hood*, 924 S.W.2d at 121. Because this conclsuory statement fails to establish the elements of the defense as a matter of law, summary judgment was not properly granted on the impossibility defense. Having determined that none of Appellees' affirmative defenses provide proper grounds for summary judgement, Issue One is overruled.

We have determined that Pagosa Oil & Gas Company lacks standing to assert a breach of contract claim in this instance and its claim must be dismissed. Having reviewed the cross-motions for summary judgment, we have concluded: (1) that Appellees are not entitled to a no-evidence summary judgment on the breach of contract cause of action; (2) that Appellant Sombrero did not satisfy its traditional summary judgment burden regarding its claim for breach of contract; and (3) that Appellees were not successful in establishing any of their affirmative defenses as a matter of law. Therefore, we reverse and remand the case for trial on the merits.

February 10, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.