Opinion issued October 27, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00766-CV

———————————

Ollie L. Evans, Appellant

V.

Betty J.
Allen, Appellee



 



 

On Appeal from the Probate Court No. 1

Harris County, Texas



Trial Court Case No. 369645

 



 

O P I N I O N

          Appellant
Ollie L. Evans filed a will contest seeking to set aside the order admitting the
December 22, 2006 will of decedent William Vincent Vinson to probate.  The trial court directed a verdict in favor
of Betty J. Allen, the independent executor of Vinson’s estate, on the ground
that the statute of limitations barred Evans’s will contest.  In two issues, Evans contends that (1) the
trial court erred in granting the directed verdict on the basis of limitations,
and (2) Allen was judicially estopped from seeking to probate the December
22, 2006 will because Allen had previously been appointed Vinson’s permanent
guardian and the probate court did not restore his capacity before his death.

          We
affirm.

Background

          William
Vinson executed a self-proving will on March 1, 2006 (the “First Will”).[1]  In this will, Vinson devised his estate in
equal shares to his niece, Ollie Evans, and his great-niece, Aisha Evans.  Vinson named Aisha as independent executor
and named Ollie as contingent independent executor.

          Due
to Vinson’s continuing severe health problems, Aisha, Ollie, and Allen, who is
Ollie’s sister, initiated guardianship proceedings.  On September 27, 2006, the Probate Court
Number 4 of Harris County issued an order appointing Allen as the permanent
guardian of Vinson’s person and estate.  The
order stated that the court found, by clear and convincing evidence, that
Vinson was “an incapacitated person.”  The
order also recited that the court found, by a preponderance of the evidence,
that Vinson “lacks the capacity to do some, but not all, of the tasks necessary
to care for himself or to manage his property.” 
Although the order again stated that Vinson “lacks the capacity to do
some, but not all tasks as more specifically set out below,” it did not specify
which tasks Vinson lacked the capacity to undertake.

          On
December 22, 2006, while he was still under guardianship, Vinson executed a
second self-proving will (the “Second Will”), which revoked the First
Will.  The Second Will contained specific
gifts to Tijuana Campbell, Vinson’s great-granddaughter, Allen, and Shatara Allen,
Allen’s daughter.  Vinson devised the
remainder of his estate to Allen and Shatara in equal shares.  This will also included the following clause:

It is my clear intention
that no property whatsoever, of any type or kind, is to be given to
Ollie L. Evans or Aisha Z. Evans of Houston, Texas.  Ollie L. Evans and Aisha Z. Evans are
expressly prohibited from inheriting by any means from my estate, real or
personal, of whatsoever kind, seized and possessed, and wheresoever situated.

 

This will named Allen as the independent executor of
Vinson’s estate.

          Vinson
died on January 18, 2007, and Allen filed an application to probate the Second
Will and to issue letters testamentary.  On
February 28, 2007, the Probate Court Number 1 of Harris County signed an order
admitting the Second Will to probate and authorizing the issuance of letters testamentary
to Allen.  Allen subsequently qualified
as independent executor.

          On
July 2, 2009, more than two years after the trial court admitted the Second
Will to probate, Evans filed an application to probate the First Will and a
will contest seeking to set aside the order admitting the Second Will to
probate.  Evans alleged that the Second
Will should be set aside “because it was fraudulently obtained and/or forged”
and because Vinson lacked testamentary capacity to execute a will on December
22, 2006, due to the ongoing guardianship. 
Evans further alleged that she timely filed the contest because the
statute of limitations did not begin running until December 15, 2007, the date
she alleged that Allen served her with an original petition to recover estate
assets.  She contended that this date was
the first time she learned (1) that the Second Will existed, (2) that it had
been admitted to probate, and (3) that Allen had been named independent
executor of Vinson’s estate.

          In
response to Evans’s will contest, Allen asserted the affirmative defense of
limitations and argued that the contest was untimely because it was not filed
within the two-year statute of limitations pursuant to Probate Code section 93,
which generally requires will contests to be brought within two years of the
date the will is admitted to probate.  Allen
additionally argued that Evans alleged no factual basis to support the
application of the fraud or forgery exceptions to the general statute of
limitations.

          On
July 14, 2010, the trial court held a brief pretrial conference with the
parties.  When discussing why the trial court
denied Evans’s previously filed motion for summary judgment, the court stated
that it could not reach the issue of Vinson’s testamentary capacity to execute
the Second Will because the statute of limitations had expired and the only
exceptions were for forgery or fraud and “there is no discovery rule for testamentary
capacity.”  The court also expressed its
opinion that Evans could not utilize the discovery rule because she had
constructive notice that the Second Will had been admitted to probate, and,
thus, the statute of limitations began running on that date.

          The
trial court held a bench trial on July 19, 2010.  The court granted a directed verdict in favor
of Allen, concluding that the discovery rule does not apply to questions of
testamentary capacity and, therefore, the statute of limitations bars her will
contest.  The court allowed Evans’s
counsel to make a bill of exceptions, during which he called Evans, Allen, and
Allen’s attorney to testify.  Evans
testified that she did not know that the Second Will existed until Allen served
her with a petition claiming that Evans owed money to Vinson’s estate.  Allen testified that she was Vinson’s
guardian, that she had participated in the guardianship proceedings, that she
never asked the probate court to restore Vinson’s capacity before he died, and
that Vinson’s capacity had not been restored by the court at the time he
executed the Second Will.  Allen’s
attorney also testified that no court proceedings restoring Vinson’s capacity
ever occurred.

          The
trial court subsequently signed a final judgment denying Evans’s will contest
and ordering that Evans take nothing.  At
Evans’s request, the trial court then issued the following findings of fact:

1.                
The Deceased, William Vinson (“Decedent”), executed a Last          Will and Testament on December 22, 2006
[that] appointed       Betty Allen as his
Independent Executrix.

 

2.                
Mr. Vinson passed away on January 18, 2007, and an          Application to Probate his Will was
filed on January 30, 2007.

 

3.                
On February 28, 2007 this Probate Court entered an Order   Probating Will [and] Authorizing Letters
Testamentary, and       issued Letters
Testamentary to Betty J. Allen as the       independent
         executrix of Mr. Vinson’s
estate.  There was no        contest to the will on file at that time.

 

4.                
On or about April 13, 2007 Ollie L. Evans (“Contestant”)     received direct notification of Betty
Allen’s appointment as       executrix and
the probating of the December 2006 Will along      with
a demand for release of assets and property belonging to         the Estate of William Vinson.

 

5.                
Ollie L. Evans filed her Contest on July 1, 2009, more than two      (2) years past the due date to contest a
probated Will for lack of          testamentary
capacity.

 

6.                
There was no evidence presented at trial that Betty J. Allen   committed any type of fraud or forgery upon
her uncle, the        Decedent, William
Vinson, when he requested a new Will or      when
he executed his specific wishes in his Last Will and      Testament on December 22, 2006.

 

The court also issued the following conclusions of
law:

1.                
Contestant’s Application is untimely and is dismissed for     failure to bring her contest within the two
(2) year time period    as specified in
the Probate Code.

 

2.                
The Contestant does not outline any facts or allegations in her        pleadings to support the assertion of
fraud or forgery that are     the only
exceptions to the two (2) year rule.

 

3.                
Ollie L. Evans was charged with constructive notice of Mr.    Vinson’s probated Will of February 28, 2007
as a party    interested in the estate
with knowledge of Mr. Vinson’s death.

 

4.                
The Application to Probate Will and Contest filed by Ollie    Evans on July 1, 2009 is barred by
limitations as it is a will      contest
based solely on the Decedent’s lack of testamentary       capacity on December 22, 2006.

 

(Citations omitted.) 
This appeal followed.

Standard of Review

          When
reviewing the grant of a directed verdict, we follow the usual standard for
assessing the legal sufficiency of the evidence.  See
Hunter v. PriceKubecka, PLLC, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011,
no pet.) (citing City of Keller v. Wilson,
168 S.W.3d 802, 821–28 (Tex. 2005)).  We
examine the evidence in the light most favorable to the party against whom the
verdict was directed, and we determine whether there is any evidence of
probative value to raise a material fact issue on the question presented.  See Bostrom
Seating, Inc. v. Crane Carrier Co., 140 S.W.3d 681, 684 (Tex. 2004).  We credit favorable evidence if reasonable
jurors could and disregard contrary evidence unless reasonable jurors could
not.  See
Hunter, 339 S.W.3d at 802 (citing City
of Keller, 168 S.W.3d at 827).  A
directed verdict in favor of the defendant is proper when “a plaintiff fails to
present evidence raising a fact issue essential to the plaintiff’s right of
recovery” or when the “plaintiff admits or the evidence conclusively
establishes a defense to the plaintiff’s cause of action.”  Prudential
Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); see also B & W Supply, Inc. v. Beckman,
305 S.W.3d 10, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (“A
directed verdict is warranted when the evidence is such that no other verdict
can be rendered and the moving party is entitled, as a matter of law, to
judgment.”) (quoting Byrd v. Delasancha,
195 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.)).

We may affirm a directed verdict
“even if the trial court’s rationale for granting the directed verdict is
erroneous, provided the directed verdict can be supported on another
basis.”  Hunter, 339 S.W.3d at 802 (citing Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 443 (Tex.
App.—Dallas 2002, pet. denied)); see also
Cox v. S. Garrett, L.L.C., 245 S.W.3d 574, 578 (Tex. App.—Houston [1st
Dist.] 2007, no pet.) (“We can consider any reason why the directed verdict
should have been granted, even if not stated in the party’s motion.”).

Statute of Limitations

          In
her first issue, Evans contends that the trial court erred in directing a
verdict in favor of Allen on the basis of limitations because (1) Evans lacked
constructive notice of the probate proceedings involving the Second Will
because she had no interest in the Second Will and (2) the issue of
testamentary capacity is subject to the discovery rule.

Probate Code section 93 provides:

After a will has been
admitted to probate, any interested person may institute suit in the proper
court to contest the validity thereof, within two years after such will shall
have been admitted to probate, and not afterward, except that any interested
person may institute suit in the proper court to cancel a will for forgery or
other fraud within two years after the discovery of such forgery or fraud, and
not afterward.

 

Tex. Prob. Code Ann. § 93
(Vernon 2003); see also Stovall v. Mohler,
100 S.W.3d 424, 427 (Tex. App.—San Antonio 2002, pet. denied) (“[Section 93]
applies to those cases where an earlier will is sought to be probated over
later wills.”).  The Probate Code further
defines “interested person” as “heirs, devisees, spouses, creditors, or any
others having a property right in, or claim against, the estate being
administered.”  Id. § 3(r) (Vernon Supp. 2010).

          A
“person interested in the estate” is “one who has a legally ascertained
pecuniary interest, real or prospective, absolute or contingent, which will be
impaired, benefitted, or in some manner materially affected by the probate of
the will.”  Abbott v. Foy, 662 S.W.2d 629, 631 (Tex. App.—Houston [14th Dist.]
1983, writ ref’d n.r.e.) (holding, in contest of will already admitted to
probate, that appellant, as beneficiary under prior will, was person interested
in estate because if probated will was void for undue influence or lack of
testamentary capacity and prior will was last valid will, appellant, “as [a] beneficiary,
has a pecuniary interest in the estate”). 
In a contest of a will already admitted to probate in which the
contestant claims that an earlier will is the last valid will, a beneficiary
under the prior will qualifies as a person interested in the estate and thus
has standing to maintain the will contest. 
See In re Estate of Redus, 321
S.W.3d 160, 162–63 (Tex. App.—Eastland 2010, no pet.) (“If the 2005 will is
Redus’s last valid will, [the contestant of the later will and the beneficiary
under the prior will] has a pecuniary interest in the estate.”).  “To show an interest in an estate by reason
of a prior will, . . . .  it is necessary that
the contestant show that he was named as a beneficiary in a testamentary
instrument executed with the formalities required by law, that is, a
will.”  Hamilton v. Gregory, 482 S.W.2d 287, 289 (Tex. Civ. App.—Houston
[1st Dist.] 1972, orig. proceeding).

          Evans
contends that she was interested in the First Will because she was a
beneficiary under that will, but that she was not interested in the Second
Will, in which she was not named as a beneficiary, because she was not necessarily
one of Vinson’s heirs at law.  The
inquiry here is not whether the contestant has an interest in a particular
will; rather, the inquiry is whether the contestant has an interest in the decedent’s
estate.  It is undisputed that the First Will named
Evans as a beneficiary and the Second Will did not.  Thus, in this attack upon the Second Will, if
the trial court had reached the issue of testamentary capacity and found that
Vinson lacked testamentary capacity at the time he executed the Second Will and
that the First Will was Vinson’s last valid will, then Evans, as a beneficiary
under the First Will, would have a pecuniary interest in Vinson’s estate.  See Estate
of Redus, 321 S.W.3d at 163; Abbott,
662 S.W.2d at 631.

          We
therefore conclude that Evans qualifies as a person interested in Vinson’s
estate.[2]

          Evans
further contends, in her first issue, that the discovery rule applies to the
issue of testamentary capacity and thus operates to delay the beginning of the
limitations period until she actually learned of the existence of the Second
Will.  Allen contends that, as a person
interested in Vinson’s estate, Evans was charged with constructive notice of
the Second Will and its contents and, therefore, the statute of limitations
began running on the date the Second Will was admitted to probate.  We agree with Allen.

          Generally,
Texas courts have refused to apply the discovery rule to claims arising out of
probate proceedings, even in cases involving allegations of fraud.[3]  See
Little v. Smith, 943 S.W.2d 414, 420 (Tex. 1997).  “A person is charged with constructive notice
of the actual knowledge that could have been acquired by examining public
records.”  Mooney v. Harlin, 622 S.W.2d 83, 85 (Tex. 1981).  Constructive notice creates an irrebuttable
presumption of actual notice.  Id. 
“Persons interested in an estate admitted to probate are charged with
notice of the contents of the probate records.” 
Id.; Little, 943 S.W.2d at 420 (“Such claims [arising out of probate
proceedings] are barred by limitations because the claimant has constructive
notice of the probate proceedings.”); In
re Estate of McGarr, 10 S.W.3d 373, 377 (Tex. App.—Corpus Christi 1999,
pet. denied) (“Even in probate cases involving allegations of fraud, Texas
courts have refused to apply the discovery rule because of the doctrine of
constructive notice and the strong public interest in according finality to
probate proceedings.”).  Thus, at the
time a will is admitted to probate, a potential contestant has constructive
knowledge of the date the testator executed the will, the fact that the contestant
was not mentioned in the will, and the fact that a previously unknown will
exists.  See Mooney, 622 S.W.2d at 85. 
In this case, the statute of limitations begins to run on the date the
will was admitted to probate.  Id.

          We
have already determined that Evans, as a beneficiary under the First Will,
qualified as a “person interested in” Vinson’s estate.  Thus, as a person interested in the estate,
she is charged with constructive notice of the contents of the public probate
records.  See id.  Examination of the
probate records in this case would have disclosed that Vinson executed the
Second Will on December 22, 2006, nearly three months after he had been placed
under guardianship, and that this will revoked the First Will and omitted Evans
as a beneficiary.  Therefore, the statute
of limitations began to run on February 28, 2007, the date the probate court
admitted the Second Will to probate.  See id.; see also Neill v. Yett, 746 S.W.2d 32, 36 (Tex. App.—Austin 1988,
writ denied) (“Examination of the probate records in this cause would have
disclosed that the will of W.T. Yett made no bequest or devise to Irmalee.  Irmalee was charged with notice that she
received nothing by her grandfather’s will and she should have begun her
investigation of the facts surrounding the execution of the will upon receiving
such notice.  The statute of limitations
began to run when W.T. Yett’s will was admitted to probate.”).  It is undisputed that Evans did not file her
will contest until July 2, 2009, more than two years after the trial court
admitted the Second Will to probate.

          We
therefore conclude that because Evans, a person interested in Vinson’s estate,
was charged with constructive notice of the Second Will, the statute of
limitations began to run on the date the court admitted the Second Will to
probate.  We hold that the trial court
correctly granted a directed verdict in favor of Allen on the basis of limitations.[4]

          We
overrule Evans’s first issue.

Judicial Estoppel

          In
her second issue, Evans contends that Allen is judicially estopped from seeking
to probate the Second Will because Allen had previously admitted, in Vinson’s
guardianship proceedings, that he was totally incapacitated and thus lacked
testamentary capacity to execute the Second Will.  Allen contends that the application of
judicial estoppel is inappropriate because the standards for incapacity and the
standards for testamentary capacity are different, and, thus, she did not assert
inconsistent positions in the two proceedings. 
We agree with Allen.

          Judicial
estoppel “precludes a party from adopting a position inconsistent with one that
it maintained successfully in an earlier proceeding.”  Pleasant
Glade Assembly of God v. Schubert, 264 S.W.3d 1, 6 (Tex. 2008).  This doctrine requires that:  (1) a sworn, inconsistent statement be made
in a prior judicial proceeding; (2) the party making the statement gained
some advantage by it; (3) the statement was not made inadvertently or because
of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and
unequivocal.  Galley v. Apollo Associated Servs., Ltd., 177 S.W.3d 523, 528–29
(Tex. App.—Houston [1st Dist.] 2005, no pet.); see also Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P’ship,
323 S.W.3d 203, 218 (Tex. App.—El Paso 2010, pet. denied) (holding same).

          Before
appointing a guardian, the court must find by clear and convincing evidence
that the proposed ward is an incapacitated person.  Tex.
Prob. Code Ann. § 684(a)(1) (Vernon 2003).  An “incapacitated person” is defined as “an
adult individual who, because of a physical or mental condition, is
substantially unable to provide food, clothing, or shelter for himself or
herself, to care for the individual’s own physical health, or to manage the
individual’s own financial affairs.”  Id. § 601(14)(B) (Vernon Supp. 2010).  The court must also find, by a preponderance
of the evidence, that “the proposed ward is totally without capacity as
provided by this code to care for himself or herself and to manage the
individual’s property, or the proposed ward lacks the capacity to do some, but
not all, of the tasks necessary to care for himself or herself or to manage the
individual’s property.”  Id. § 684(b)(4).

          A
testator has testamentary capacity if he has “sufficient mental ability, at the
time the will is executed, to understand the business in which the [testator]
is engaged (the making of the will); the effect of [his] act in making the
will; and the general nature and extent of [his] property.”  In re
Estate of Robinson, 140 S.W.3d 782, 793 (Tex. App.—Corpus Christi 2004, pet.
denied); In re Neville, 67 S.W.3d
522, 524 (Tex. App.—Texarkana 2002, no pet.). 
The testator must also “know [his] next of kin and the natural objects
of [his] bounty, and have had sufficient memory to collect in [his] mind the
elements of the business to be transacted, to hold those elements long enough
to perceive their obvious relation to each other, and to form a reasonable
judgment about them.”  Estate of Robinson, 140 S.W.3d at 793.

The proper focus is whether the
testator had testamentary capacity on the day that the will was executed.  Id.
(citing In re Estate of Graham, 69
S.W.3d 598, 606 (Tex. App.—Corpus Christi 2001, no pet.)).  We may look to the testator’s state of mind
at other times “if these times tend to show [his] state of mind on the day the
will was executed.”  Id. (citing Bracewell v.
Bracewell, 20 S.W.3d 14, 22 (Tex. App.—Houston [14th Dist.] 2000, no pet.));
see also In re Estate of Trawick, 170
S.W.3d 871, 877 (Tex. App.—Texarkana 2005, no pet.) (“When there is an absence
of any direct testimony of acts, demeanor, or condition indicating that the
testator lacked testamentary capacity on the date the will was executed, the
testator’s mental condition on that date may be determined from lay opinion
testimony based on the witnesses’ observations of the testator’s conduct either
prior or subsequent to the execution.”). 
We consider this evidence “if it demonstrates that a condition affecting
the individual’s testamentary capacity was persistent and likely present at the
time the will was executed.”  Bracewell, 20 S.W.3d at 22 (quoting Horton v. Horton, 965 S.W.2d 78, 85
(Tex. App.—Fort Worth 1998, no pet.)).

          Texas
courts have held that a testator under a guardianship is “not necessarily
incompetent to make a will although such adjudication [of incapacity] is not
set aside [at the time the will was executed].”[5]  Clement
v. Rainey, 50 S.W.2d 359, 359 (Tex. Civ. App.—Texarkana 1932, writ ref’d); see also Duke v. Falk, 463 S.W.2d 245,
252 (Tex. Civ. App.—Austin 1971, no writ) (“Even if the guardianship
proceedings had demonstrated that [the testator] had been declared a person of
unsound mind, being prior to and not too remote from the date of making the
will, nevertheless such evidence would have no probative force except as it
might tend to show his state of mind at the time of execution of the
will.”).  In Clement, the Texarkana Court of Civil Appeals held that:

One’s mental powers may be
so far impaired as to incapacitate him from the active conduct of his estate,
and to justify the appointment of a guardian for that purpose, and yet he may
have such capacity as will enable him to direct a just and fair disposition of
his property by will.  The most that can
be contended for on account of the [guardianship] adjudications is that they
prima facie establish that the testator was not competent to make the will.

 

50 S.W.2d at 359; cf. Stephen v. Coleman, 533 S.W.2d 444, 447 (Tex. Civ. App.—Fort
Worth 1976, writ ref’d n.r.e.) (“Therefore, there was no adjudication that the
testator was incompetent on the date that the will was signed.  It follows then that there was no presumption
that the testator did not have testamentary capacity on the date he signed the
will.”).

          Thus,
although the fact that a testator was under a guardianship at the time that he
executed a will creates a presumption that he lacked testamentary capacity,
that presumption is not conclusive and may be rebutted with evidence that the
testator had testamentary capacity on the day that he executed the will.  See
Clement, 50 S.W.2d at 359; Stephen,
533 S.W.2d at 447 (noting that if testator had been adjudicated incompetent
before will was executed, there is presumption
of no testamentary capacity); see also
Bolton v. Stewart, 191 S.W.2d 798, 802 (Tex. Civ. App.—Fort Worth 1945, no
writ) (“We also believe that the prima facie evidence of insanity at all times
subsequent to the adjudication is subject to rebuttal by competent
proof . . . .”).  A
guardianship determination is relevant to the question of testamentary
capacity, but it does not follow that a testator automatically lacks
testamentary capacity after a court places the testator under a guardianship.

          Here,
the earlier probate court found on September 27, 2006, that Vinson was an
incapacitated person and required a guardian of the person and of the
estate.  In making this determination,
the court ruled that Vinson “lacks the capacity to do some, but not all, of the
tasks necessary to care for himself or to manage his property.”  The order creating the guardianship and appointing
Allen as Vinson’s guardian does not specify which tasks Vinson lacked the capacity
to perform.  In making this
determination, the court did not find that Vinson was “totally incapacitated.”[6]

          We
therefore conclude that because a testator under a guardianship does not
necessarily lack testamentary capacity to execute a will, Allen, by seeking a
guardianship for Vinson and by seeking to probate a will executed after the
initiation of the guardianship, did not assert inconsistent positions.  We therefore hold that Allen is not
judicially estopped from seeking to probate the Second Will.

          We
overrule Evans’s second issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Massengale.

 











[1]
          This will states that it is the
“Last Will and Testament of William M. Vinson.” 
The December 22, 2006 will states that it is the “Last Will and
Testament of William V. Vinson.”  The
parties do not dispute that these two wills refer to the same testator.





[2]
          We further note that both
Probate Code section 93, which governs will contests initiated after a will is
admitted to probate, and Probate Code section 10, which governs will contests
initiated before a will is admitted to probate, require a contestant to be
“interested” to have standing to maintain the contest.  See
Tex. Prob. Code Ann. §§ 10,
93 (Vernon 2003); see also In re Estate
of Redus, 321 S.W.3d 160, 162 (Tex. App.—Eastland 2010, no pet.) (“A person
must have an interest in an estate to have standing to file a will
contest.”).  Here, Evans argues that she
is interested in the estate such that she has standing to contest the Second
Will, but that she is not interested
in the estate such that she can be charged with constructive notice of the
Second Will upon its admission to probate for limitations purposes.





[3]
          We note that the plain language
of section 93 provides an exception to the general two-year statute of
limitations only in cases of “forgery or other fraud.”  Tex.
Prob. Code Ann. § 93.  The statute
does not refer to testamentary capacity. 
When interpreting a statute, we begin with the plain language of the
statute because “it is a fair assumption that the Legislature tries to say what
it means, and therefore the words it chooses should be the surest guide to
legislative intent.”  Fitzgerald v. Advanced Spine Fixation Sys.,
Inc., 996 S.W.2d 864, 866 (Tex. 1999). 
Evans does not argue and cites no authority for the proposition that
lack of testamentary capacity constitutes “other fraud” such that this issue
falls within the limitations exception.  See Neill v. Yett, 746 S.W.2d 32, 35
(Tex. App.—Austin 1988, writ denied) (“The type of fraud that invalidates a
probate judgment upon attack pursuant to § 93 is extrinsic fraud, not
intrinsic fraud.  Fraud is considered
‘intrinsic’ when the fraudulent acts pertain to an issue that was, or could
have been, litigated in the original suit. 
On the other hand, fraud is extrinsic when the fraudulent acts prevent a
party from either having a trial or prevent him from having a fair opportunity
to present his case.”).





[4]
          Evans contends that the trial
court impermissibly established Allen’s statute of limitations affirmative
defense “by judicial fiat.”  Allen raised
this defense in her original answer to Evans’s will contest and argued that
Evans could not establish that the “forgery or other fraud” exceptions applied
to this case.  A court may take judicial
notice of the papers on file in a case, and thus the court may judicially
notice that the Second Will was admitted to probate on February 28, 2007, and
that Evans did not file her will contest until July 2, 2009, more than two
years later.  See Klein v. Dimock, 705 S.W.2d 408, 410–11 (Tex. App.—Fort Worth
1986, writ ref’d n.r.e.) (“This is sufficient evidence on which the judge can
determine that the application was filed beyond the limit of the two year
statute of limitations.”).  Furthermore,
it was undisputed that Evans was a beneficiary under the First Will, but not the
Second Will, and thus the trial court could permissibly determine, as a matter
of law, that Evans, as an interested person, was charged with constructive
notice of the Second Will and that the statute of limitations began running on
the date the Second Will was admitted to probate.  See Cox
v. S. Garrett, L.L.C., 245 S.W.3d 574, 578 (Tex. App.—Houston [1st Dist.]
2007, no pet.) (stating, in review of grant of directed verdict, that we may
consider any reason why directed verdict should have been granted, even if not
raised in motion for directed verdict).





[5]
          This appears to be the rule
followed by most jurisdictions.  See A. G. Barnett, Annotation, Effect of guardianship of adult on
testamentary capacity, 89 A.L.R.2d 1120 § 2 (1963) (“All of the cases
found . . . follow the general rule that one otherwise of
testamentary capacity may make a valid will, regardless of the fact that he is
under guardianship, that is, that the mere existence of a guardianship at the
time the will was executed does not require the conclusion that the will is
invalid.”).





[6]
          Although Evans argues that Allen
judicially admitted that Vinson was “totally incapacitated,” the record
contains only Vinson’s doctor’s recommendation regarding a guardianship and the
guardianship order itself.  The record
does not contain Allen’s pleadings from the guardianship proceeding.  During Evans’s bill of exceptions, Allen
testified only that the probate court had declared Vinson incapacitated and
that the court did not restore his capacity prior to his death.