COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS

SOCORRO PUENTES, JUAN A.     §
PUENTES, AND ALL OTHER                 No. 08-10-00137-CV
OCCUPANTS OF 576 MOGOLLON  §
CIRCLE EL PASO, TEXAS 79912,            Appeal from the
§
           Appellants,         County Court At Law No. 5
§
v.                      of El Paso County, Texas
§
                          (TC# 2009-J00056-CC5)
FANNIE MAE, A/K/A FEDERAL  §
NATIONAL MORTGAGE
ASSOCIATION,             §

           Appellee.         §

**O P I N I O N**

In this forcible detainer suit, the county court awarded possession of Juan and Socorro

Puentes' residence to Federal National Mortgage Association ("Fannie Mae"). Mr. and Mrs.

Puentes raise three issues on appeal to this Court. In Issues One and Two, they challenge the

county court's judgment on jurisdictional and *res judicata* grounds. In Issue Three, they also

contend the court abused its discretion by admitting a business records affidavit containing

inadmissible hearsay evidence.

Juan and Socorro Puentes executed a deed of trust to finance the purchase of their home

at 576 Mogollon Circle in El Paso ("the property") on June 20, 2007. They stopped making

payments on their mortgage in January 2009, and the loan went into foreclosure. On February 3,

2009, the Mortgagee, First Franklin Financial Corporation, through its mortgage servicer, Home

Loan Services, Inc., executed a substitute trustee's deed conveying the property via a non-judicial

foreclosure sale to Fannie Mae.[1] On April 1, 2009, Fannie Mae sent three separate written notices to vacate the property, addressed to "Occupant," "Juan A. Puentes," and "Socorro Puentes." The address on the face of each notice was the property at 576 Mogollon Circle in El Paso, and indicates it was sent via certified mail, return receipt requested, and a copy by regular post. According to the United States Postal Service "Track & Confirm" information, the notices were "delivered on April 28, 2009 in ADDISON, TX 75001."

The Puentes family continued to inhabit the property, and on April 17, 2009, Fannie Mae filed a petition for forcible detainer action to evict Mr. and Mrs. Puentes, take immediate possession of the property in the Justice of the Peace Court, Precinct Number One, of El Paso County ("the First JP Suit").[2] The justice court rendered a Final Judgment in the case on June 11, 2009. The judgment states in relevant part:

The Court hereby:

.        .        .

[F]inds that [Mr. and Mrs. Puentes] did answer or make appearance in some manner, after which a trial was held and evidence and argument was considered;

.        .        .

[D]enies [Fannie Mae's] claim for possession of [the property] referred to above.

The judgment also awarded the Puentes' $227 for court costs, and purported to order the issuance of a writ of possession on June 17, 2009. No further action was taken in the First JP Suit.

On July 2, 2009, with Mr. and Mrs. Puentes still in possession of the property, Fannie

---

[1] Fannie Mae purchased the property at a public auction for $141,099.49.

[2] The First JP Suit was filed under cause number "F109-0124."

Mae filed a second forcible detainer action ("the Second JP Suit").[3]  This Second JP Suit was filed in the same justice court, and sought the same relief as that requested in the first suit. Citation was issued to "Socorro Puentes & Juan Puentes And All Other Occupants" on July 2, 2009, and again on July 7, 2009.  The justice court rendered a Final Judgment in the Second JP Suit (cause number F109-0211) on July 16, 2009, awarding possession of the property to Fannie Mae.[4]  The judgment included an order for the issuance of a writ of possession on July 22, 2009.

Mr. and Mrs. Puentes appealed the justice court's ruling to El Paso County Court at Law Number Five.  *See* TEX.R.CIV.P. 749.  In the County Court they amended their pleadings to include a *res judicata* defense, arguing that the Second JP Suit was barred by the judgment in the First JP Suit.  After conducting additional discovery, Mr. and Mrs. Puentes filed a motion for summary judgment on their defense, and attached evidence of the First JP Suit and judgment.

The trial court heard the case on April 29, 2010.  After summarily denying the Puentes' motion for summary judgment, the court proceeded to hear evidence and argument on Fannie Mae's petition for forcible detainer.  The first witness to testify was Mr. Antonio Martinez, the attorney who represented Fannie Mae in the First JP Suit.  Mr. Martinez testified that the primary issue addressed during the hearing in the First JP Suit was whether or not Mr. and Mrs. Puentes were properly notified of Fannie Mae's intent to take possession of the property.  The Puenteses denied having received such notice, and Fannie Mae was not able to produce admissible evidence that such notice had been provided.  Mr. Martinez agreed that Fannie Mae was unsuccessful in

---

[3] The Second JP Suit was filed under cause number "F109-0211."

[4] The judgment also granted Fannie Mae's request for attorneys' fees in the amount of $400 and court costs in the amount of $127.  The monetary awards were also subject to five percent post judgment interest.

the First JP Suit.

Juan Puentes was the next witness called to the stand. Mr. Puentes testified that he and his wife had resided at 576 Mogollon Circle since July 2007. He stated that he was not aware that the property had been foreclosed on over a year-and-a-half earlier, although he admitted that December 2008 was the last time a mortgage payment was made on the property. Mr. Puentes also denied ever receiving any notice to vacate from Fannie Mae.

During Mr. Puentes' testimony, their attorney moved for directed verdict on the basis that there was no evidence that the Puentes family was ever provided notice of the foreclosure, the forcible detainer action, or notice to vacate the property. In response, counsel for Fannie Mae offered a business records affidavit stating that notice to vacate was sent to the 576 Mogollon Circle address by certified and regular mail prior to the Second JP Suit. This was the second business records affidavit offered by Fannie Mae during the hearing. Although it was originally filed with the trial court on January 19, 2010, it was offered during trial specifically in rebuttal to the Puentes' argument that they had never received notice to vacate the property.

The Puentes' attorney then noted that according to the US Postal Service "Track & Confirm" information attached to the affidavit, the notices were delivered to Addison, Texas, not an address in El Paso. Counsel for Fannie Mae pointed out that the affidavit also stated that the notices were, in fact, mailed to the El Paso address, and explained that the documents were forwarded to Addison, Texas when they were not picked up by Mr. and Mrs. Puentes. The Puentes' attorney immediately objected to the affidavit on the basis that the "testimony" regarding the mailing of the notices was outside the bounds of a business records affidavit and

-4-

was inadmissible hearsay.[5] Counsel also re-urged his motion for directed verdict on the grounds that there was no evidence the notices to vacate were mailed to the property, and concluded Fannie Mae's petition should be denied for failure to comply with the pre-suit notice requirements for a forcible detainer action. The trial court denied the motion for directed verdict and admitted the affidavit in its entirety as "Plaintiff's Exhibit 4."

The hearing continued with Mrs. Puentes' testimony. She also denied ever receiving any notice to vacate the property, and further denied ever receiving any notice from Fannie Mae or its attorneys. On cross-examination, Mrs. Puentes testified that she checked her mail on a regular basis, and that she was not away from her home during the first week in April 2009.

In open court following Mrs. Puentes' testimony, the trial court held that Fannie Mae mailed the required notices and granted the entity possession of the property. The court also ordered that a writ of possession would issue six days following the rendition of judgment in the case. The written judgment was signed on March 29, 2010.

On appeal to this Court, Mr. and Mrs. Puentes raise three issues. In Issue One, they contend the doctrine of *res judicata* defeats the Second JP Suit, and therefore the County Court at Law's judgment. In Issue Two, they assert that Fannie Mae's sole remedy for the judgment in the First JP Suit was an appeal to the County Court, and that the entity's failure to exercise that

---

[5] In relevant part the affidavit states:

> On APRIL 1, 2009, a Notice to Vacate was forwarded by certified mail, return receipt requested, and regular mail, postage prepaid, to Defendant, SOCORRO PUENTES and all other occupants of 576 MOGOLLON CIRCLE, EL PASO, TEXAS 79912, demanding that the Defendants vacate the property within three (3) days or a forcible detainer proceedings [sic] would be commenced against them and all other occupants.

right is fatal to the subsequent judgments. In Issue Three, Mr. and Mrs. Puentes argue the trial court abused its discretion by admitting Fannie Mae's second business records affidavit in its entirety, because the affidavit contained inadmissible hearsay evidence.

Due to its potential effect on Issues One and Two, we will address Issue Three first. We review rulings regarding the admissibility of evidence under an abuse of discretion standard. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). In an abuse of discretion review, the appellate court will consider whether the trial court acted arbitrarily, unreasonably, or without regard for guiding rules and principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). To warrant reversal based on an evidentiary error, the complainant must also demonstrate, in light of the entire record in the case, that the error probably caused the rendition of an improper judgment. *See* TEX.R.APP.P. 44.1(a)(1); *State v. Cent. Expressway Sign Associates*, 302 S.W.3d 866, 870 (Tex. 2009). When erroneously admitted or excluded evidence was crucial to a key issue, the error is most likely harmful. *Cent. Expressway Sign Associates*, 302 S.W.3d at 870. On the other hand, the admission or exclusion of a particular exhibit is likely harmless if the evidence was cumulative of other evidence in the record, or the if the balance of the evidence in the case was so one-sided that the error was not likely to have affected the judgment. *Id*.

In Issue Three, Mr. and Mrs. Puentes challenge the trial court's decision to admit "Plaintiff's Exhibit 4," Fannie Mae's second business records affidavit in its entirety, on the basis that the affidavit contained testimony beyond the scope of applicable hearsay exception. Fannie Mae offered the exhibit under the business records exception to the hearsay rule, which permits evidence which otherwise would be inadmissible to be admitted if it meets certain specific

criteria. *See* TEX.R.EVID. 803(6). To be admissible under this exception, the proponent of the evidence must demonstrate: (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to create such records; (3) the records were created at or near the time of the event recorded; and (4) the records were created by a person with knowledge who was acting in the regular course of business. *Riddle v. Unifund CCR Partners*, 298 S.W.3d 780, 782 (Tex.App.--El Paso 2009, no pet.). These prerequisites to admissibility may be provided in the form of an affidavit by the custodian of records, or other qualified witness who has personal knowledge of the information contained therein. *See Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811, 813-14 (Tex. 1982).

The Puenteses do not contend that the affidavit fails to establish the requisite elements of the exception. Their argument is limited to the complaint that the final paragraph of the affidavit, in which the affiant describes the date and manner in which Fannie Mae states that notices to vacate were transmitted to the occupants of the property, because there is no evidence that the affiant had personal knowledge of the information, and the information was not related to any of the elements of the exception, and was therefore outside the scope of the exception. With regard to the first argument, the opening paragraph of the affidavit specifically states that the affiant has "personal knowledge of the facts contained in this Affidavit and that they are true and correct." As such, the affidavit, demonstrates on its face that the affiant had the requisite knowledge of the facts contained in the document, and the trial court did not abuse its discretion by overruling this argument.

With regard to the Puentes' second argument, they summarily conclude that the allegedly offending paragraph is inadmissible hearsay, "because it purports to give testimony with respect

to facts outside the scope of the business records exception." The only authority cited in the brief to support this proposition generally addresses the personal knowledge requirement for a business records affiant. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 140 (Tex. 2004)(discussing the "hearsay within hearsay" problems raised by manufacturer's documentation of consumer complaints, and noting that to the extent complain records were offered to prove the truth of the matters asserted, such records could not be admissible under the business records exception "unless the employee making the record had personal knowledge of each [complaint]"); *In re A.T.*, No. 02-04-00355-CV, 2006 WL 563565, *3 (Tex.App.--Fort Worth March 9, 2006, pet. denied)(mem. op., not designated for publication)(a business records affiant is not required to have personal knowledge of the contents of the records, but must have personal knowledge of the manner in which the records were prepared).

Even if we were to assume for the sake of argument, that the paragraph was hearsay, and rendered the entire affidavit inadmissible, any error in its admission is harmless as the testimony is cumulative of other evidence in the record. *See Cent. Expressway Sign Associates*, 302 S.W.3d at 870. The attached records include copies of the April 1, 2009 notices, documentation that the notices were mailed to the 576 Mogollon address, and documentation that they posted via certified mail. In addition, the affidavit itself, with identical attachments had been on file with the trial court, without objection, for several months prior to trial. As the potential error created by the affidavit's admission was not harmful, the trial court's ruling is not a basis for reversal. *See* TEX.R.APP.P. 44.1(a). Issue Three is overruled.

The Puentes' remaining appellate issues raise related arguments which they contend demonstrate the invalidity of the judgments flowing from the Second JP Suit. In Issue One, they

argue the judgment in the Second JP Suit, and by appeal, the judgment in the county court are barred by *res judicata*. In Issue Two, they contend that Fannie Mae's failure to appeal the judgment in the First JP Suit divested that court and the County Court at Law of subject-matter jurisdiction over the Second JP Suit. Because Issue Two raises such a jurisdictional challenge, we will address it before discussing Issue One.

Whether a court has subject-matter jurisdiction is a question of law to be reviewed *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Justice courts have original jurisdiction over forcible-detainer suits. *See* TEX.PROP.CODE ANN. § 24.004 (West 2000); TEX.GOV'T CODE ANN. § 27.031(a)(2)(West Supp. 2010). The justice court's judgment may be appealed to the county court for *de novo* review. TEX.R.CIV.P. 749; *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 434 (Tex.App.--Houston [1st Dist.] 2007, no pet.). The county court's appellate jurisdiction is limited to the original jurisdiction of the justice court. *Black v. Washington Mut. Bank*, 318 S.W.3d 414, 416-17 (Tex.App.--Houston [1st Dist.] 2010, pet. dism'd w.o.j.).

In both courts, the sole issue to be determined in a forcible detainer suit is the petitioner's right to immediate possession of the real property at issue. *Black*, 318 S.W.3d at 416. No other issues, controversies or rights of the parties related to the property, including title, can be adjudicated in such a suit. *Nguyen*, 229 S.W.3d at 434. In simpler terms, a forcible detainer suit asks one simple, and specific question: "who has right to possess the property *now*?" *See Black*, 318 S.W.3d at 417; *Valencia v. Garza*, 765 S.W.2d 893, 899 (Tex.App.--San Antonio 1989, no writ). Because the judgment in such a case is necessarily limited to the scope of the suit, an award of possession on a particular date does not implicate a party's possessor right on a future

-9-

date.  *See Garza*, 765 S.W.2d at 899.

Based on the nature of the cause of the particular cause of action at issue here, the judgment in the First JP Suit was nothing more than a determination that, at that time, the Puenteses had a superior right to possess the property.  We are unaware of, and the Puenteses' brief does not cite to any authority requiring an appeal from a justice court's judgment of possession for purposes of maintaining its subject-matter jurisdiction.  To the contrary, such a requirement would destroy the usefulness of the cause of action itself, by defeating its immediacy.  *See Holcombe v. Lorino*, 124 Tex. 446, 79 S.W.2d 307, 309 (1935)(stating the purpose for the forcible entry and detainer proceedings is to provide "a summary, speedy, simple, and inexpensive remedy for the determination of who is entitled to the possession of premises without resorting to an action upon the title").  As the First JP Suit had no effect on the justice court's jurisdiction to consider the Second JP Suit, and Fannie Mae was not required to appeal the judgment.  Issue Two is overruled.

In Issue One, Mr. and Mrs. Puentes contend that the County Court's judgment must be reversed on the basis that *res judicata* precluded the Second JP Suit.  *Res judicata* is an affirmative defense.  TEX.R.CIV.P. 94.  The party claiming the defense must prove:  (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the identity of the parties, or those in privy with them; and (3) a second action based on the same claims which were, or could have been raised in the first action.  *Pagosa Oil and Gas, L.L.C. v. Marrs and Smith P'ship*, 323 S.W.3d 203, 215 (Tex.App.--El Paso 2010, pet. denied).  *Res judicata* precludes both the re-litigation of claims that have been previously adjudicated, as well as subsequent litigation of claims which arose out of the subject matter of the prior litigation.  *Pagosa Oil and Gas*, 323

S.W.3d at 215-16.

The only element in dispute in this case is whether the Second JP Suit was, in fact, a second action based on the same claims as the First JP Suit. At first glance, the two forcible detainer suits are seemingly identical. However, as we discussed on our analysis of Issue Two, a forcible detainer cause of action is uniquely limited in time. *See Garza*, 765 S.W.2d at 899.

Turning to the record before us, despite their facial similarity, the Second JP Suit was actually a new and independent action to determine which party had the superior right of immediate possession at the time it was filed. *See Black*, 318 S.W.3d at 417; *Garza*, 765 S.W.2d at 899. It was not a "re-litigation" of the right to immediate possession at the time of the First JP Suit, and therefore does satisfy the third element of *res judicata*. *See Pagosa Oil and Gas*, 323 S.W.3d at 215-16. Accordingly, the County Court did not err by denying the Puenteses judgment on their affirmative defense. Issue One is overruled.

Having overruled all of Appellants' issues, we affirm the trial court's judgment.

August 31, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.