**KMART STORES OF TEXAS, L.L.C., and Sears Holdings Management Corporation, Appellants,**

**v.**

**Norma RAMIREZ, Appellee.**

No. 08–15–00094–CV

Court of Appeals of Texas, El Paso.

March 16, 2016

Enrique Chavez, Chavez Law Firm, El Paso, TX, for Appellee.

Robert E. Bettac, Ogletree Deakins Nash Smoak & Stewart, P.C., San Antonio, TX, for Appellant.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

**YVONNE T. RODRIGUEZ, Justice**

Norma Ramirez sued Appellants Kmart Stores of Texas, L.L.C. and Sears Holdings Management Corporation (collectively Kmart) for disability discrimination. Kmart moved to arbitrate based on an agreement that Ramirez purportedly acknowledged through Kmart's online employee portal and accepted by continuing to work for the company. The trial court refused to compel arbitration, and this appeal followed.

The central question here is whether Ramirez's *Tipps*[1] hearing testimony denying that she ever received or knew about the agreement created a genuine fact issue on notice that the trial court could have resolved in her favor, given that Kmart's electronic records purportedly show her unique login credentials were used to access and acknowledge the agreement on the online portal.

We find Ramirez raised a fact issue, and the trial court did not abuse its discretion in denying Kmart's motion to compel. The judgment of the trial court is affirmed.

## BACKGROUND

Ramirez began working for Kmart as an at-will employee on May 23, 2010. In April 2012, Kmart introduced an arbitration policy requiring submission of all disputes between employees and the company to arbitration. Kmart maintains that by September 14, 2012, employees were required to complete a series of policy acknowledgments on Kmart's My Personal Information (MPI) online portal.[2] Among the policies posted on the portal was the arbitration agreement.

When the agreement is posted, an employee must undertake several steps in order to access and acknowledge it. First, the employee must enter her user ID and password information into the MPI login page. After successfully entering login information, an employee is directed to the

---

1. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992)(orig. proceeding).

2. Employees previously received and acknowledged employee policies on a training system known as the Online Performance Training System.

MPI portal home page, which contains a menu with several options, including a link entitled "SHC Policy Acknowledgments." When an employee clicks on that link, she is directed to the policy acknowledgements page. That page contains a list of both completed and pending policy acknowledgments. If the employee has not viewed the arbitration policy, a red hyperlink that says "Arbitration Policy/Agreement" appears on the page. Clicking that hyperlink directs the employee to another page containing four additional hyperlinks: two links led to copies of the arbitration agreement in both PDF and plaintext formats, one link led to an "Opt Out form," and the fourth link was an acknowledgement of receipt.

The agreement admonishes an employee to read the terms carefully, "as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration." Specifically, the arbitration agreement states that "all employment-related disputes between you ('Associate') and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set below." The agreement also states that if the employee does not wish to be subject to arbitration, the employee must opt out within thirty days. Per the agreement's terms, "[b]y not opting out of this Agreement within the Opt–Out Period, Associate will be deemed to have agreed to be bound by this Agreement, including the arbitration provision[.]" The agreement also states that "[a]rbitration is not a mandatory condition of Associate's employment at Company[.]"

The Opt Out form, contained behind the third link on the arbitration agreement page, allowed employees, per agreement's terms, to cancel the agreement within thirty days. To opt out of the arbitration agreement, an employee must print the form and then either mail it or fax it to the address or phone number listed on the document.

When the employee clicks on the fourth link, the employee receives a prompt asking her to confirm acknowledgment and receipt of the arbitration agreement. The employee must then click both the "Yes" and "Submit" buttons to clear the screen. Once this screen is cleared, Kmart's internal human resource records are automatically updated to reflect employee acknowledgement of the agreement.

Roberta Kaselitz, a compliance programs manager with Sears, stated in an affidavit to the trial court that Ramirez received copies of the arbitration agreement "as part of the February 2012 launch of the new Agreement" and in April 2012. As proof of this, Kaselitz testified that Kmart's internal PeopleSoft Human Resources Management System indicated that an "Arbitration Policy/Agreement 'Course' was created in the PeopleSoft system" with a start date of February 3, 2012. Kaselitz further testified in her affidavit that "[t]he 'End Date' column reflects Plaintiff acknowledged receipt of the Agreement on April 23, 2012."

On March 13, 2013, Kmart terminated Ramirez's employment. She filed suit for disability discrimination in October 2014. Kmart moved to arbitrate, submitting as evidence Kaselitz's affidavit and attached exhibits setting out the arbitration agreement and demonstrative screenshots from the MPI portal system. Ramirez responded and filed an affidavit in which she stated that she had never electronically acknowledged or agreed to any arbitration agreement.

The trial court then held a *Tipps* evidentiary hearing, where Ramirez again denied ever receiving or agreeing to the agreement. The entirety of her direct examination testimony on this point is as follows:

Q. Okay. And, Ms. Ramirez, did you yourself ever log in on April 23, 2012, through Kmart's MPI online portal to view an arbitration agreement?

A. No.

Q. Did you ever click on a purported screen saying that you acknowledge receipt of the arbitration policy or agreement link?

A. No.

Q. Were you ever presented with the arbitration agreement at any time during your employment?

A. No

Q. Either electronically or in writing?

A. No.

On cross-examination, Ramirez admitted to having using the MPI system before, and she denied ever giving her user ID information or password to anybody else. She also denied seeing certain sections of the MPI portal and testified that the only thing she remembered was the portion dealing with her W–2 forms. Ramirez admitted to having reviewed some policies electronically at the beginning of her employment, and she stated that she was familiar with Kmart's general distribution of policies and procedures via electronic means. However, she denied ever logging onto Kmart's network on April 23, 2012, except to clock in for work. She testified that she never saw the language on the MPI portal directing her to the arbitration agreement, and she did not know that other employees were subject to arbitration agreements. Kmart presented no new evidence at the hearing, but only moved to admit the evidence it had already submitted with its motion, including Kaselitz's Affidavit.

The trial court subsequently denied Kmart's motion to compel arbitration.

## DISCUSSION

In one issue, Kmart contends that the trial court erred by refusing to compel arbitration. Because Ramirez does not dispute that the terms of the Kmart arbitration agreement would require her to arbitrate disability discrimination claims, we consider only whether the evidence conclusively established both parties actually assented to that agreement. *See Delfingen US–Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex.App.–El Paso 2013, no pet.)(party seeking to compel arbitration must establish both the existence of an agreement and that an arbitrable dispute exists within that agreement's scope).

### *Standard of Review and Applicable Law*

In reviewing the denial of a motion to compel arbitration, "we apply a no-evidence standard to the trial court's factual determinations and a *de novo* standard to legal determinations." *Sidley Austin Brown & Wood, L.L.P. v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex.App.–Dallas 2010, no pet.)(describing this standard as the "same as the abuse of discretion standard of review"); *see also Delfingen US–Tex., L.P.*, 407 S.W.3d at 798.

"[D]espite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration." *In re Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex. App.–Houston [14th Dist.] 2015, pet. filed). "[W]hen we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement." *Wright v. Hernandez*, 469 S.W.3d 744, 751 (Tex.App.–El Paso 2015, no pet.).

"The burden of establishing an arbitration agreement's existence is evidentiary and runs with the party seeking to compel arbitration." *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex. App.–El Paso 2014, no pet.). Whether the parties agreed to be bound to an arbitration agreement is a contract formation question we review *de novo*, deferring to the trial court's findings of historical fact as between the parties so long as those determinations are supported by evidence. *Id.* at 811–12; *Sidley Austin Brown & Wood, L.L.P.*, 327 S.W.3d at 863. "An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex.2006)(orig. proceeding)(per curiam).

Motions to compel arbitration are ordinarily decided in summary proceedings "on the basis of affidavits, pleadings, discovery, and stipulations." *Jack B. Anglin Co., Inc.*, 842 S.W.2d at 269. "A summary motion to compel arbitration is essentially a motion for partial summary judgment, subject to the same evidentiary standards." *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208 (Tex.App.–El Paso 2004, orig. proceeding)[Internal citation omitted]. Where a party seeking to compel arbitration provides competent, prima facie evidence of an arbitration agreement, and the party seeking to resist arbitration contests the agreement's existence and raises genuine issues of material fact "by presenting affidavits or other such evidence as would generally be admissible in a summary proceeding[,]" the trial court must forego summary disposition and hold an evidentiary hearing. *Nabors Drilling USA, L.P. v. Carpenter*, 198 S.W.3d 240, 246 (Tex.App.–San Antonio 2006, no pet.)[Internal citation omitted]. Where the trial court conducts such a *"Tipps* hearing" and thereafter makes a ruling, we review the trial court's findings for legal sufficiency. *Sidley Austin Brown & Wood, L.L.P.*, 327 S.W.3d at 863. "In a nonjury proceeding, when no findings of fact or conclusions of law are filed or requested, we infer that the trial court made all the necessary findings to support its judgment." *Paragon Indus. Applications, Inc. v. Stan Excavating, L.L.C.*, 432 S.W.3d 542, 548 (Tex.App.–Texarkana 2014, no pet.). "When the inferred findings of fact are supported by the evidence, the appellate court must uphold the judgment on any theory of law applicable to the case." *Id.* at 549.

### Analysis

At the outset, we recognize that this is not the first time this Court has dealt with the issue of whether an employee's electronic acceptance of an arbitration agreement is valid absent a physical signature.[3] Earlier this term, but after the parties in this case submitted their briefs, the Court decided *Firstlight Federal Credit Union v. Loya*, 478 S.W.3d 157, 167–70 (Tex.App.–El Paso 2015, no pet.), another case involving employee acceptance-by-conduct of an arbitration agreement distributed through an electronic portal. In *Firstlight*, the Court held that the arbitration agreement was enforceable against the employee be-

---

**3.** We note that under the Texas Business and Commerce Code, an electronic signature is as valid as a physical signature. Tᴇx. Bᴜs. & Cᴏᴍ.Cᴏᴅᴇ Aɴɴ. § 322.007(d)(West 2015). An "electronic signature" is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Tᴇx. Bᴜs. & Cᴏᴍ.Cᴏᴅᴇ Aɴɴ. § 322.002(8)(West 2015). Kmart does not specifically argue that Ramirez electronically signed the arbitration agreement, only that electronic evidence suggests she viewed the document and thus had notice of its contents.

cause "it [wa]s uncontroverted that Loya was notified electronically of the 2011 arbitration agreement and that she electronically acknowledged receipt of that notice and the arbitration agreement itself." *Firstlight,* 478 S.W.3d at 168. Further, the terms of the agreement stated that Loya's continued employment with Firstlight beyond a certain date constituted acceptance of the arbitration agreement's terms, and it was undisputed that Loya continued working for Firstlight beyond that operative date. *Id.*[4] Thus, the Court held that Firstlight proved Loya agreed to be bound by the arbitration agreement under the acceptance by continuing at-will employment rule set out in *In re Halliburton Co.,* 80 S.W.3d 566, 568–69 (Tex. 2002)(orig. proceeding). *See Firstlight,* 478 S.W.3d at 168–69.

Although the facts of this case track *Firstlight* closely, here, Ramirez specifically *denied* receiving notice of the arbitration agreement, whereas the employee in *Firstlight* never contested receiving notice. We also note that under the Texas Business and Commerce Code, "[a]n electronic record ... is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Tex.Bus. & Com.Code Ann. § 322.009(a)(West 2015). "The effect of an electronic record or electronic signature attributed to a person ... is determined from the context and surrounding circumstances at the time of its creation, execu-

tion, or adoption, including the parties' agreement, if any, and otherwise as provided by law." Tex.Bus. & Com.Code Ann. § 322.009(b).

Ultimately, how we resolve this fact question on notice determines whether this case is governed by *Firstlight.* If we determine Ramirez failed to raise a genuine fact issue on notice through her testimony, *Firstlight* controls, and arbitration is required. If her testimony is sufficient to create a fact issue on notice, we must defer to the trial court's assessment of credibility and demeanor and affirm the lower court's order.

### Did Kmart Provide Competent Prima Facie Evidence of Acceptance?

▇ We first address whether Kmart brought forth some evidence of notice. Ramirez asserts that in deciding this threshold issue, we should exclude Roberta Kaselitz's affidavit and certain exhibits from our consideration because the trial court improperly admitted them into evidence over her objections that screenshots attached to the affidavit could not be authenticated and that the affidavit itself contained hearsay and impermissible opinion testimony. Kmart correctly notes that Ramirez did not cross-appeal these evidentiary rulings. However, Kmart as appellant and proponent of the agreement bears both the initial burden of establishing the agreement's existence by legally sufficient evidence, and of negating any contravening evidence from Ramirez. *United Rentals, Inc.,* 445 S.W.3d at 813.

---

4. In *Firstlight,* the employer explicitly made arbitration a condition of continuing employment in its notice to the employee. 478 S.W.3d at 169. By contrast, Kmart's arbitration agreement here makes clear that agreeing to be bound to arbitrate disputes is *not* a condition of continuing employment. Be-

cause this appeal turns on the fact question of notice, discussion of the difference between the consideration given between the parties here and in *Firstlight* is not a material consideration in this case and is unnecessary to resolution of this appeal. Tex.R.App.P. 47.1.

Evidence is legally insufficient where, *inter alia*, "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact[.]" *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). Although a trial court's evidentiary rulings are reviewed for abuse of discretion and will not ordinarily be grounds for reversal absent a showing of prejudice to substantial rights, the trial court's ruling in favor of arbitration cannot rest on legally insufficient evidence, including evidence barred from being given weight "by rules of law or evidence[.]" *Id.* "In a bench trial, we presume that the trial court, sitting as the fact finder, disregarded any improperly admitted evidence." *Kenny v. Portfolio Recovery Assocs., L.L.C.*, 464 S.W.3d 29, 32 (Tex.App.–Houston [1st Dist.] 2015, no pet.)[Internal quotation marks omitted]. "[C]onclusory [opinion] statements cannot support a judgment even when no objection was made to the statements at trial." *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex.2004)(analyzing legal sufficiency in light of conclusory expert testimony). Further, because Ramirez actually objected on hearsay grounds, we cannot on appeal consider statements in Kaselitz's affidavit if those statements are, in fact, hearsay. *See City of Keller*, 168 S.W.3d at 812 n.29 (hearsay evidence may be considered on legal sufficiency review only if admitted without objection). Thus, to resolve this appeal and determine whether

Kmart offered legally sufficient evidence that would require Ramirez to bring her own legally sufficient rebuttal evidence, we must decide whether Kaselitz's affidavit contains sufficient admissible information raising a fact issue.[5]

### Authentication and Hearsay

First, Ramirez argues that the Kaselitz Affidavit fails to authenticate the attached exhibits, in particular, a screenshot that allegedly showed that Ramirez received and acknowledge the arbitration agreement on April 23. Ramirez maintains that because Kaselitz did not witness Ramirez perform the transaction, she cannot verify the screenshot is authentic. We disagree.

"A piece of evidence's authenticity is a prerequisite to admissibility." *United Rentals, Inc.*, 445 S.W.3d at 813. The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.*; Tex.R.Evid. 901(a). "[T]he predicate for admissibility under rule 901 may be proven by circumstantial evidence." *Sanchez v. Tex. State Bd. of Med. Examiners*, 229 S.W.3d 498, 509 (Tex.App.–Austin 2007, no pet.). "A document is considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the requirements of self-authentication" set out in Tex. R.Evid. 902. *Castro v. Sebesta*, 808 S.W.2d 189, 195 (Tex.App.–Houston [1st Dist.] 1991, no writ)(op. on reh'g). Here, Kaselitz testified in her affidavit that as a com-

---

5. We pause briefly to note that "[e]xcept in those instances specified by statute or rule, affidavits are not evidence in contested cases." *Ortega v. Cach, L.L.C.*, 396 S.W.3d 622, 630 (Tex.App.–Houston [14th Dist.] 2013, no pet.). Case law is silent as to whether the trial court may consider *ex parte* affidavits as substantive evidence at a *Tipps* evidentiary hearing. Ramirez's argument that she was not allowed to cross-examine Kaselitz's aver-

ments is welltaken, but we will assume without deciding that such affidavits are permissible forms of "merits" evidence for purposes of our analysis, noting that this issue is ultimately unnecessary to the resolution of this appeal, since even if the affidavit raised more than a scintilla of evidence on formation, the trial court could still resolve this issue in Ramirez's favor based on her testimony.

pliance programs manager with Sears' Law Department; that in her capacity as such, she is familiar with the electronic system and HR software; and that she attached a true and correct screenshot from the PeopleSoft system. That is sufficient to authenticate the screenshot.

Second, Ramirez contends that we cannot consider the following statement from the Kaselitz Affidavit in reaching our decision: "On April 23, 2012, Plaintiff acknowledged receipt of the 'Arbitration Policy/Agreement' by clicking 'Yes' and 'Submit' on the agreement's acknowledgement page." Specifically, Ramirez argues that Kaselitz failed to establish personal knowledge that she saw Ramirez click through the final screen, and as such, her comments are at best nothing more than speculative recitation of hearsay. However, Kaselitz's assertions are inferences based on Kmart's business records, and business records fall into a well-recognized exception to the hearsay rule.

Evidence is admissible under the business records exception if the proponent demonstrates: (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to create such records; (3) the records were created at or near the time of the event recorded; and (4) the records were created by a person with knowledge who was acting in the regular course of business. *Puentes v. Fannie Mae*, 350 S.W.3d 732, 737 (Tex.App.–El Paso 2011, pet. dism'd). The witness offering the business records must be a custodian of the records or an otherwise qualified witness, or she may submit an affidavit meeting the formal requirements of TEX.R.EVID. 902(10) to establish the predicate for admission. TEX. R.EVID. 803(6)(D). "Knowledge of the general procedures for collecting and maintaining data in electronic records is

sufficient knowledge to lay the predicate necessary for admission of business records." *Longoria v. Greyhound Lines, Inc.*, 699 S.W.2d 298, 303 (Tex.App.–San Antonio 1985, no writ).

Kaselitz never avers that she is a custodian of records, and her affidavit does not meet the formal requirements of TEX. R.EVID. 902(10) that would otherwise establish the predicate necessary for the records' admission. Nevertheless, the records are admissible because she is a qualified witness under TEX.R.EVID. 803(6)(D). Again, she testified in her affidavit that she is a compliance programs manager with Sears' Law Department. She testified that she is familiar with the electronic systems that the company uses PeopleSoft to manage HR records, that "[a]mong the information maintained in PeopleSoft are [sic] some records of employees' receipt of employment policies and participation in some of the compliance online training programs administered by the Company[,]" and that the records automatically update once an employee views documents. That is sufficient to demonstrate the records were kept in the regular course of business. As such, her screenshot and the derivative statement are admissible.

### *The Kaselitz Affidavit Meets the Scintilla of Evidence Standard*

Taking the Kaselitz Affidavit as a whole, Kmart met its prima facie burden of raising a fact issue on notice. Kaselitz testified that Kmart's electronic records indicated that on April 23, 2012, Ramirez's login information was used on Kmart's computer system to access and view the arbitration agreement.

### Did Ramirez Raise a Fact Issue on Notice?

Because Kmart cleared its initial evidentiary hurdle by offering the Kaselitz Affi-

davit, the burden shifts to Ramirez to present more than a scintilla of evidence on the issue of notice. Ramirez denied receiving notice in an affidavit attached to her motion response, which triggered a *Tipps* hearing. Ramirez asserts that her affidavit testimony and her live, in-court testimony at the *Tipps* hearing are sufficient to allow the court to resolve this controversy in her favor.

Kmart disagrees, and directs the Court's attention to several federal district court decisions in which trial judges sided with Kmart and Sears or their affiliates and subsidiaries in enforcing this very arbitration agreement, concluding that an employee's bare denial of notice cannot overcome business records showing that the employee logged in to an employer's portal and electronically received notice of the arbitration agreement. *See Washington v. Sears Logistics Srvs., Inc.*, No. 3:13–CV–3060–L, 2014 WL 2159253, at *4 (N.D.Tex. May 23, 2014); *Grynko v. Sears Roebuck & Co.*, No. 1:13 CV 2482, 2014 WL 66495, at *4 (N.D.Ohio Jan. 6, 2014)(finding employee failed to raise genuine fact issue on acceptance under Ohio contract law by her denial where she could not also explain why Sears records show she acknowledged receipt of the policy); *cf. Mill v. Kmart Corp.*, No 14–cv–02749–KAW, 2014 WL 6706017, at *6 (N.D.Cal. Nov. 26, 2014), *abrogated on other grounds by Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 439–441 (9th Cir.2015)(rejecting employee's arguments that agreement was procedurally unconscionable under California state law because trial court believed company provided notice of arbitration rules); *Velazquez v. Sears, Roebuck & Co.*, No. 13cv680–WQH–DHB, 2013 WL 4525581, at *6 (S.D.Cal. Aug. 26, 2013)(electronic presentment of arbitration agreement through portal not procedurally unconscionable under California state law).

While these cases involve the same or a similar electronic portal acceptance system with a thirty-day opt-out period, even as persuasive authority, the majority of Kmart's federal district cases only demonstrate how various trial judges resolved evidentiary discrepancies in the record. They do not address the dispositive appellate issue of whether the employee's denial of notice raised a fact issue ripe for trial court resolution. Only *Grynko* touches on the pertinent issue of whether the employee raised a fact issue by denying notice, but the *Grynko* court summarily concluded that the employee failed to raise a genuine fact issue under Ohio law, and provides little help in answering whether Ramirez's denial of notice constitutes more than a scintilla of evidence in Texas. It is clear that in all of the cases Kmart cites, the trial judges credited Kmart's evidence over the employee's testimony. But these cases do not answer whether we as a Texas appellate court must reverse the trial court's decision here, when the judge decides under this set of facts that the scales tip towards the employee.

Although case law on this particular issue is scant, we believe Ramirez's denial was sufficient to create a fact issue that the trial court could resolve. Notice is a fact question, and ultimately, this case boils down to which version of facts the trial court credits. *See Gunda Corp., L.L.C. v. Yazhari*, No. 14–12–00263–CV, 2013 WL 440577 (Tex.App.–Houston [14th Dist.] Feb. 5, 2013, no pet.)(mem.op.)(reversing summary arbitration order and remanding for factual hearing where employer had a purported signed copy of arbitration agreement that employee denied ever seeing or signing). Traditionally, when resolution of an appeal turns on a quintessential fact question such as a witness's credibility or demeanor, we stay our hand and defer to

the trial court. The rationale behind this practice is the belief that a trial judge hearing live testimony from witnesses in the flesh is usually in a better position to gauge witness reliability than an appellate review of testimony and documents from a cold record. Kmart urges us to disregard this well-established practice here, disregard the trial court's findings, and disregard Ramirez's testimony because she is an interested witness. In Kmart's view, their evidence is purportedly conclusive. However, this argument goes to the weight of Ramirez's testimony, not its legal sufficiency, and we question whether we even possess the authority to conduct a weight-based, factual sufficiency-type review of *Tipps* hearing findings under the articulated standard of review. *See Sidley Austin Brown & Wood, L.L.P.*, 327 S.W.3d at 862 (stating that the appellate courts "apply a *no-evidence standard* to the trial court's factual determinations" when reviewing motions to compel arbitration)[Emphasis added].

■■■■ Moreover, Kmart is an equally interested party, and it cites no authority in support of its contention that its electronic records constitute conclusive evidence as a matter of law. "[T]estimony by an interested witness may establish a fact as a matter of law only if the testimony could readily be contradicted if untrue, and is clear, direct and positive, and there are no

circumstances tending to discredit or impeach it." *Preston Reserve, L.L.C. v. Compass Bank*, 373 S.W.3d 652, 657–58 (Tex.App.–Houston [14th Dist.] 2012, no pet.). Neither party can satisfy that burden under these facts and on this record.[6] As such, it was within the trial judge's province to decide which side's evidence he would credit.

We are not unsympathetic to Kmart's concerns that if we credit the trial judge's findings here, the strength of many *Firstlight*-type arbitration agreements distributed through an electronic portal can be undermined by an employee's oral denial of notice at a *Tipps* hearing, should the trial judge believe the employee. But that is a gamble every employer takes any time it foregoes an employee signature and instead hangs its hat on a fact finder's determination of whether it met *Halliburton*'s notice requirements. *See Big Bass Towing Co. v. Akin*, 409 S.W.3d 835, 842 (Tex. App.–Dallas 2013, no pet.)(where employer claimed employee had notice of arbitration agreement because it was made available for inspection and review and employee denied ever seeing or knowing about agreement, appellate court deferred to trial court's factual determination in favor of employee as required by standard of review). As between Kmart's ex parte affidavit and Ramirez's live testimony, the trial judge was free to believe whichever

---

**6.** Although Kmart never raises this point in its brief, we acknowledge that an electronic record may be attributed to a person if that record's creation was the result of a person's act. TEX.BUS. & COM.CODE ANN. § 322.009(a). While the act of a person may be shown "in any manner" under this provision, we do not believe the mere existence of an electronic record can conclusively establish a person undertook an "act," particularly in light of a person's sworn denial. Additionally, while the code allows courts to infer an electronic record upon "a showing of the efficacy of any security procedure applied to determine the

person to which the electronic record or electronic signature was attributable[,]" *id.*, no such showing was made here. In her affidavit, Kaselitz explains that she has knowledge of the company's computer system and electronic HR records, but she never vouches for the integrity of those records or explains any security measures Kmart uses to ensure its computer systems or software cannot be tampered with. Absent even that bare showing, we will not craft a rule that automatically credits an employer's records over an employee's testimony as a matter of law.

he thought was more persuasive. *Id.* Kmart has failed to cite any authority requiring the courts to give presumptive credence to an employer's electronic records over an employee's testimony in arbitration determinations, and we will not so hold today. We trust in the ability of the lower courts to resolve factual discrepancies, to discern the truth, and to ferret out dishonest or perjurious attempts by employees to avoid the ramifications of failing to read employer notices.

In short, the evidence was legally sufficient to support the trial court's ruling. Issue One is overruled.

The judgment of the trial court is affirmed.