

## Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00396-CV

**CONTINENTAL HOMES OF TEXAS, L.P.** d/b/a Express Homes,
Appellant

v.

Giancarlo **PEREZ** and Krystle Perez,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-10075
Honorable Larry Noll, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:        Irene Rios, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: October 19, 2022

AFFIRMED

Continental Homes of Texas, L.P. d/b/a Express Homes ("Continental Homes") appeals

from the trial court's interlocutory order denying its motion to compel arbitration. We affirm.

### BACKGROUND

Continental Homes, a residential homebuilder, entered into a contract with Giancarlo and

Krystle Perez ("the Perezes") regarding the construction and sale of a home located in San Antonio,

Texas. The contract contains an arbitration provision stating that "every potential dispute between

the parties occurring before and after the closing of [the Perezes'] purchase of the [home]" is

subject to binding arbitration to be administered and conducted by the American Arbitration Association." After closing on their home, the Perezes complained to Continental Homes about alleged defects in the foundation. They sued Continental Homes in Texas district court, alleging claims for fraud, breach of contract, negligence, and violations of the Texas Deceptive Trade Practices Act.

After answering the lawsuit, Continental Homes moved to compel arbitration pursuant to the contract. In response, the Perezes argued the arbitration agreement was not enforceable due to unconscionability. After a hearing, the trial court denied Continental Homes's motion to compel the parties to arbitration. Continental Homes then filed this interlocutory appeal.

### DISCUSSION

Continental Homes argues that the trial court erred in denying its motion to compel arbitration. "A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). "If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement, such as waiver" and unconscionability. *Id*. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. (quoting *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002)).

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Id*. "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Id*. "Whether the claims in dispute fall

within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo." *Id*.

"Motions to compel arbitration are ordinarily decided in summary proceedings 'on the basis of affidavits, pleadings, discovery, and stipulations.'" *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App.—El Paso 2016, pet. denied) (quoting *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)). "A summary motion to compel arbitration is essentially a motion for partial summary judgment, subject to the same evidentiary standards." *Id*. (quotation omitted). Where genuine issues of material fact are raised by the parties, the trial court "must forego summary disposition and hold an evidentiary hearing." *Id*. (citing *Nabors Drilling USA, L.P. v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.—San Antonio 2006, no pet.)). Where the trial court conducts such an evidentiary hearing, we review the trial court's findings for legal sufficiency. *Id*. "In a nonjury proceeding, when no findings of facts or conclusions of law are filed or requested, we infer that the trial court made all the necessary findings to support its judgment." *Id*. "When the inferred findings of fact are supported by the evidence, the appellate court must uphold the judgment on any theory of law applicable to the case." *Id*.

In the trial court, Continental Homes attached as evidence in support of its motion to compel arbitration the contract in question, which includes an arbitration provision. In response to Continental Homes's motion, the Perezes argued the arbitration agreement was unconscionable and attached affidavits in support of their unconscionability argument. On appeal, the existence of the arbitration agreement and the scope of the agreement are not in dispute. Instead, the issue on

appeal is whether the Perezes presented some evidence from which the trial court could conclude they met their burden in proving their defense—the unconscionability of the arbitration provision.[1]

### A. Substantive Unconscionability

Unconscionable contracts are unenforceable. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010). Texas law recognizes both substantive and procedural unconscionability. *Id*. "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding). Because the Perezes complain of the prohibitive cost of arbitration, their affirmative defense to arbitration is grounded in substantive unconscionability. *See Olshan*, 328 S.W.3d at 892.

"Generally, a contract is unconscionable if, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Id*. (quotation omitted). "[A]n arbitration agreement may render a contract unconscionable if 'the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his or her] statutory rights in the arbitral forum.'" *Id*. (quoting *Green-Tree Fin Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)) (alteration in original).

As noted above, the "party opposing arbitration bears the burden to show that the costs of arbitration render it unconscionable." *Id*. at 893. "When 'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" *Id*. (quoting *Green Tree*, 531 U.S. at

---

[1]Although the Perezes in the trial court brought additional defenses to compelling arbitration, the Perezes limit their argument on appeal to substantive unconscionability. As we conclude there was some evidence to support the trial court's ruling on the basis of substantive unconscionability, we need not consider the other defenses brought by the Perezes in the trial court.

92). "[S]ome evidence that a complaining party will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum" is required. *Id*. (quotation omitted).

In *Olshan*, 328 S.W.3d at 894, the Texas Supreme Court discussed how the Fourth Circuit approached the issue of whether the party seeking to invalidate the arbitration agreement had shown that the costs of arbitration rendered the arbitration agreement unconscionable. The Fourth Circuit explained "the proper analysis 'evaluate[d] whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation.'" *Id*. (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)). This inquiry required "a case-by-case analysis that focuse[d], among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Id*. (quoting *Bradford*, 238 F.3d. at 556). "The key factor [was] not *where* the cost to pursue the claim [went], but *what* the total cost to the claimant to pursue the claim [was]." *Id*. (emphasis in original). The Fourth Circuit "'fail[ed] to see how a claimant could be deterred from pursuing his statutory rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court.'" *Id*. (quoting *Bradford*, 238 F.3d at 556) (alteration in original).

The supreme court then discussed the analysis by the Corpus Christi-Edinburg Court of Appeals in *Honrubia Properties, Ltd. v. Gilliland*, No. 13-07-00210-CV, 2007 WL 2949567 (Tex. App.—Corpus Christi-Edinburg Oct. 11, 2007, no pet.). The supreme court noted that in *Honrubia Properties*, the court "considered the party's ability to pay the arbitration fee, the actual amount of the fee in relation to the amount of the underlying claim, and the cost differential between arbitration and litigation in court." *Olshan*, 328 S.W.3d at 894. "Applying the standard, the court held the arbitration agreement was not substantively unconscionable where evidence showed the

arbitration would cost approximately $15,000 to $20,283, plus expenses and other possible fees; the claimant was seeking more than $4,000,000 in compensatory and punitive damages; and arbitration costs would range from 11 percent to 15 percent of the claimant's gross income." *Id*. (discussing *Honrubia Properties*, 2007 WL 2949567, at *7). "The claimant failed to submit any evidence pertaining to the expected cost differential between arbitration and litigation." *Id*.

In considering both *Bradford* and *Honrubia Properties*, the supreme court explained that the crucial inquiry in applying the unconscionability standard is "whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *Id*. "With this in mind, [the supreme court] agree[d] that the approach taken by the Fourth Circuit in *Bradford* effectively pursues this inquiry." *Id*. According to the supreme court, the analyses in *Bradford* and *Honrubia Properties* "correctly assume[d] that litigation allows claimants to effectively vindicate their rights, despite the expense." *Id*. "The desire to avoid steep litigation expense—including the costs of longer proceedings, more complicated appeals on the merits, discovery, investigations, fees, and expert witnesses—is the purpose of arbitration in the first place." *Id*. "In the absence of unusual animus between the parties or external motives, plaintiffs continue to pursue claims when the expected benefits of the lawsuit outweigh the total cost of bringing it." *Id*. "If the total cost of arbitration is comparable to the total cost of litigation, the arbitral forum is equally accessible." *Id*. Thus, according to the supreme court, "a comparison of the total costs of the two forums is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation." *Id*. at 894-95. "Other factors include the actual cost of arbitration compared to the total amount of damages the claimant is seeking and the claimant's overall ability to pay the arbitration fees and costs." *Id*. at 895. "These factors may also show arbitration to be an inadequate and inaccessible forum for the

particular claimants to vindicate their rights." *Id*. "However, these considerations are less relevant if litigation costs more than arbitration." *Id*.

### B.    Evidence in this Case

As noted, Continental Homes attached to its motion to compel the contract between the parties, which included an arbitration provision. Continental Homes provided no other evidence, and no additional evidence was presented at the hearing on the motion to compel. In support of their argument that compelling them to arbitration was unconscionable due to prohibitive costs, the Perezes attached to their response affidavits by Krystle Perez and Kenneth Grubbs. Additionally, attached to Grubbs's affidavit was (1) the American Arbitration Association's ("AAA") Construction Industry Arbitration Rules and Mediation Procedures, (2) the AAA's Construction Industry Arbitration Rules and Mediation Procedures Administrative Fee Schedules, and (3) the resumes and costs of twenty different arbitrators on the AAA's "Roster."

The contract at issue provided for binding arbitration to be administered by the AAA and for fees to be "divided equally unless otherwise directed by the arbitrator." With regard to whether the Perezes can afford these arbitration fees, Krystle Perez in her affidavit discusses the family's monthly budget. She affirms that she and her husband cannot afford the costs of arbitration and would not have agreed to the arbitration provisions had she known about the costs of arbitration. She states that she was unaware of how expensive arbitration proceedings would be. She then details the family's monthly budget:

1. Gross Monthly Income:   $7,167
2. Mortgage Payment:       $1,730.21
3. Car Payment:            $908.49
4. Credit Cards:           $750
5. Insurance:              $663.73
6. Child Support:          $1192
7. Utilities (past month)  $564.62
8. Groceries (with 5 kids) $770.85
9. Legal Fees              $500

| 10. Internet | $75 |
| Net Disposable Income | $12.10 |

Krystle Perez affirms that this budget does not include federal taxes, social security, and FICA. Thus, "[a]fter paying taxes and gas expenses (which is why [the Perezes] have a gas credit card, [they] have less than $12 a month in disposable net income with the ongoing litigation." According to Krystle Perez, they "are lucky that [their] attorney is allowing [them] to simply make monthly payments on [their] bill while the litigation is continuing." They hired their attorney on an hourly basis.

Their attorney, Kenneth Grubbs, explains in his affidavit that he has been a licensed attorney since 1997 and has participated "in many arbitrations over the past 24 years and am intimately familiar with the costs of a [AAA] and the costs of same." He further explains that he has attached to his affidavit "a true and accurate costs of the current construction arbitration rules." He notes that the "home in question and contract have a contract price of $219,000," which would "mean[] that the initial filing fee [for the arbitration] is $2,650." "In addition, the contract in question calls for AAA arbitration and does not shift the fees to the Defendant." Thus, Grubbs affirms that "there will be a three-arbitrator panel appointed by AAA." Grubbs further notes that he has attached "a copy of various arbitrator costs and fees." Grubbs explains in his affidavit that the "average daily arbitrator costs is about $2000 per day depending on the daily fee or hourly rate." Grubbs concludes that the Perezes "side of this fee would be $1000" and a "full week hearing would be at least $5,000." Further, Grubbs explains that "[t]here is also an additional closing fee of $2,000." Based on his knowledge of the facts of the case and his experience, Grubbs concludes that the "minimal costs of the arbitration itself" would be "about $10,000."[2] In contrast, Grubbs

---

[2]We note that Continental Homes cites *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 107-08 (Tex. App.—San Antonio 2016, no pet.), for the proposition that "providing AAA's fee schedule is not evidence of the actual amount of fees for a particular arbitration. In *Bray*, the party opposing arbitration attached a conclusory affidavit

states that the litigation costs would include the filing fee of $300 and a jury fee of $40. Accordingly, he concludes that arbitration is going to be "much more costly" for the Perezes than "the normal court process."

In attacking the evidence submitted by the Perezes, Continental Homes first argues Grubbs incorrectly concludes that the initial filing fee for arbitration will be $2650 based on the contract for the home in question having a price of $219,000. Continental Homes states there is no indication in the record that the Perezes are seeking damages of $219,000. In their petition, the Perezes request Continental Homes to "undertake the costs necessary to repair the foundation and related damages . . . which could easily exceed $70,000." In addition to their breach of contract claim, the Perezes have also brought claims for DTPA, breach of implied warranties, fraud, negligence, and plead for other damages related to those causes of action. The AAA standard fee schedule provides the following:

| Amount of Claim | Initial Filing Fee | Final Fee |
| --- | --- | --- |
| Less than $75,000 | $750 | $800 |
| $75,000 to less than $150,000 | $1750 | $1250 |
| $150,000 to less than $300,000 | $2650 | $2000 |

Based on this fee schedule and the Perezes pleading, the trial court could have reasonably concluded that the arbitration's initial filing fee would be $1750 and the final fee would be $1250, for which the Perezes would be responsible for paying half.

Continental Homes next attack the resumes of the twenty AAA arbitrators attached to the Perezes' response. Continental Homes argues that "[t]here is no evidence that any of these

---

stating that that the costs of arbitration would be a "serious financial burden" and the AAA chart without further explanation. *Id*. The present case, however, is factually distinguishable as Grubbs's affidavit, which was based on his experience and knowledge of arbitration proceedings, applies that fee schedule to what would be charged in this particular case.

proposed arbitrators are qualified to serve as an arbitrator in this case or would be appointed." We disagree with Continental Homes's contention that the Perezes would need to show which arbitrator specifically would be appointed in this case. Further, in reviewing the resumes of the AAA arbitrators, we find that there is evidence to support Grubbs's conclusion that the "average daily arbitrator costs . . . about $2000 per day." Finally, Continental Homes attacks Grubbs's affidavit for various reasons, but its arguments relate to Grubbs's credibility. We emphasize that Continental Homes did not attach its own evidence relating to the costs of arbitration and thus Grubbs's affidavit is uncontroverted. Moreover, Grubbs's affidavit is not conclusory and is based on his experience.

In considering the evidence submitted by the Perezes, we conclude the trial court could have reasonably found that the Perezes cannot afford much in either arbitration or litigation costs. The Perezes have an agreement with their attorney and have no budget for much else. While Continental Homes criticizes the Perezes for not specifying the exact terms of their agreement with their attorney, the evidence reflects that Grubbs is paid on an hourly basis and we can infer from his affidavit that he believes the amount of time he spends on this case will be the same whether he represents the Perezes in court or at the arbitration proceeding. Further, based on Grubbs's affidavit, we can infer that Grubbs and the Perezes intend to bring their litigation on a "shoestring" budget, doing little more than filing the petition and making a jury demand. Such a budget is not possible with arbitration, which requires the upfront payment of fees.[3]

---

[3]While Continental Homes argues that the Perezes could attempt to "defer or reduce the administrative fees" pursuant to R-55 of the AAA Arbitration Construction Rules or pursuant to the contract's provision allowing the arbitrator to divide arbitration fees and costs at his or her discretion, the evidence in the case supports an inference that the trial court concluded the Perezes could not afford much more than a shoestring litigation and even reduced arbitration fees would preclude them from prosecuting their claims.

**CONCLUSION**

Based on the uncontroverted evidence submitted by the Perezes, we conclude the trial court could have reasonably found that the arbitral forum in this case is not an adequate and accessible substitute to litigation for the Perezes. *See In re Olshan*, 328 S.W.3d at 894-95. Thus, we hold the trial court did not abuse its discretion in denying Continental Homes's motion to compel arbitration.


Liza A. Rodriguez, Justice